**UNITED STATES of America**

v.

**Russell HINES, Appellant.**

No. 72–1312.

United States Court of Appeals,
Third Circuit.

Argued Sept. 11, 1972.

Decided Nov. 28, 1972.

Certiorari Denied March 5, 1973.
See 93 S.Ct. 1452.

**226**

Steven G. Farber, Asst. Defender, Defender Assn. of Philadelphia, Philadelphia, Pa., for appellant.

Walter S. Batty, Jr., Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before BIGGS, JAMES ROSEN * and HUNTER, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

On September 12, 1969, three men robbed the Wynnefield Avenue Branch of the Girard Trust Bank at gunpoint. The appellant Hines was indicted on four counts charging him with participating in this armed robbery in violation of Title 18, United States Code §§ 2113(a), (b), and (d). A first trial ended in a mistrial when the jury failed to reach a verdict, but on retrial, Hines was found guilty by a jury. This appeal followed.

Hines has raised three issues: (1) whether reversible error was committed by references to a photograph of Hines used by the FBI in pre-trial photographic identifications; (2) whether the trial court erred in instructing the jury concerning the government's failure to call a witness who had testified for the government in Hines' first trial; and (3) whether defense counsel's decision not to file a pre-trial motion to suppress identification testimony and his failure to call a witness who had testified for the government in the first trial denied Hines the effective assistance of counsel as guaranteed by the Sixth Amendment. Consideration of these issues requires the affirmance of Hines' conviction.

I. *References to Photographs of Appellant used in Pre-trial Identification.*

The government's case consisted of the testimony of four bank employees who described the robbery, identified Hines in court as one of the robbers, and told of a pre-trial photographic identification in which each selected Hines' picture from a photo-spread as being that of one of the robbers. An FBI agent was called who described his activities in investigating the case, including the showing of a photo-spread to the witnesses approximately ten days after the robbery. The pre-trial photographic identification was also brought out during the government's opening arguments to the jury. From this Hines argues that the references to his photograph exhibited by the FBI had the effect of injecting his prior criminal record into the trial, as the jury "must have" concluded that the picture of him was a "mug-shot." It is therefore claimed that such references denied Hines due process of law under the Fifth Amendment, or at least constituted prejudicial error as a matter of federal evidentiary law. We will treat the constitutional claim and the evidentiary claim together for we hold that no error was committed, much less one of constitutional magnitude.

■ It is well established that evidence of other offenses and prior trouble with the law is inadmissible in a criminal prosecution as part of the government's case against the defendant. In Michelson v. United States, 335 U.S. 469, 475–476, 69 S.Ct. 213, 218, 93 L. Ed. 168 (1948), the Supreme Court stated the basis of this rule as follows:

"Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. Not that the law invests the defendant with a presumption of good character, Greer v. United States, 245 U.S. 559, 38 S.Ct. 209, 62 L.Ed. 469, but it simply closes the whole matter of character, disposition and reputation on the prosecution's case-in-chief. The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even

---

*Judge James Rosen participated in the argument in this case and concurred in the result but died before the opinion was filed.

though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." (Notes omitted).[1]

It is on this general rule and the recent Pennsylvania Supreme Court decision, Commonwealth v. Allen, 448 Pa. 177, 292 A.2d 373 (1972), that Hines places his chief reliance. In *Allen*, the Court held under circumstances substantially the same as those here[2] that as a principle of Pennsylvania's law of evidence, a reference to a defendant's photograph in police possession constitutes reversible error where "a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity." Since "the constant mention of photographs during direct examination permitted the jury to infer that the appellant had a prior criminal record," the "prejudice thus created" required reversal. *Allen* at 181–183, 292 A.2d at 375–376.

It cannot be denied that in the case at bar the jury may conceivably have inferred the existence of Hines' criminal record from the numerous references to his photograph.[3] Indeed we concede the possibility of some prejudice. But even so, we cannot accept this *Allen* doctrine, for contrary to the principles enunciated in the cited case, admissibility of evidence does not turn on prejudice alone.[4] This fact is crucial in understanding the differences between the approaches followed by the Pennsylvania Supreme Court and this court. As we said in United States v. Stirone, 262 F.2d 571, 576–577 (3 Cir. 1959), reversed on other grounds, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960): "[T]he general rule, as stated by most courts, is that evidence of other offenses is inadmissible in a criminal prosecution for a particular crime. The rule is qualified by a number of exceptions stated in terms of

---

1. *Michelson,* however, "refers to evidence *introduced for the purpose of showing the defendant's evil character and of leading the jury to infer that the defendant was guilty of a particular crime.*" United States ex rel. Choice v. Brierley, 460 F.2d 68, 71 (3 Cir. 1972) (Emphasis added). Hines' case therefore does not fall directly within the ambit of *Michelson* for any evidence implicating his prior criminal record was not introduced to show evil character or criminal disposition, but rather to corroborate the witnesses' in-court identifications.

 This is not to say that references to a defendant's criminal record are proper where *Michelson* does not apply. The policy expressed in *Michelson* has been carried over to other situations, resulting in the general rule that the government may not introduce evidence of a defendant's criminal record in its case-in-chief. United States v. Gray, 468 F.2d 257 (3 Cir. 1972).

2. In *Allen*, witnesses also testified concerning a pre-trial photographic identifi-

cation. As is the case here, the photographs were not introduced into evidence, nor was the term "mug-shot" ever mentioned, and the inference to a prior criminal record could only have occurred through the jury's knowledge of the defendant's photograph having been in police possession.

3. See Barnes v. United States, 124 U.S. App.D.C. 318, 365 F.2d 509, 512 (1966) : ". . . [T]he testimony that the police had on hand photographs of the accused might conceivably have led a juror, at least a sophisticated juror, to hypothesize [or in more ordinary English, to "guess"] that the accused had a police record."

4. Compare United States ex rel. Scoleri v. Banmiller, 310 F.2d 720 (3 Cir. 1962), cert. denied, sub nom. Banmiller v. Scoleri, 374 U.S. 828, 83 S.Ct. 1866, 10 L.Ed.2d 1051 (1963), with United States ex rel. Choice v. Brierley, 460 F.2d 68 (3 Cir. 1972).

the capacity of the evidence to prove some specific fact or issue such as intent, plan, scheme or design. But since the range of relevancy, other than for the purpose of showing criminal propensity, is almost infinite, we think the rule may be phrased a little less mechanically. *Evidence of other offenses may be received if relevant for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime.*

"Of course the trial judge may, in the exercise of his sound discretion, exclude evidence which is logically relevant to an issue other than propensity, *if* he finds that *the probative value of such evidence is substantially outweighed by the risk that its admission will create a substantial danger of undue prejudice.*" (Citations' and notes omitted, emphasis added).[5]

■ Thus, as we have said, in deciding the admissibility of evidence indicating Hines' criminal record, the potential for prejudice to him is not the sole factor to be considered. Taking into account all the attendant circumstances, we must balance the degree of prejudice with the probative value of the evidence. Hines' reliance on *Allen* is misplaced, since in *Allen* the Court expressly refused to utilize a balancing technique,[6] and instead, having found prejudice existed, reversed for the evidence of Allen's criminal record did not fall into any of the exceptions to the general rule of the inadmissibility of prior criminal records (such as common scheme or design).[7] The difficulty with the approach used in *Allen* is that the utiliza-

tion of a list of exceptions to the rule prohibiting proof of other crimes "tends to produce a mechanical jurisprudence, with evidence admitted if it can be fit within a recognized exception"[8] or excluded if it cannot be regardless of its prejudicial nature or probative value.

■ Turning to the facts of the case at bar, we hold that no error has been committed, much less one of constitutional dimensions. References to the pre-trial photographic identifications were made to buttress the in-court identifications. "This has been a proper and strategically sound tactic for years." United States v. Clemons, 144 U.S.App. D.C. 235, 445 F.2d 711, 713 (1971), cert. denied, 404 U.S. 956, 92 S.Ct. 322, 30 L. Ed.2d 273 (1971). The value of such evidence was recognized in Gilbert v. California, 388 U.S. 263, 272 n. 3, 87 S. Ct. 1951, 1956, 18 L.Ed.2d 1178 (1967), where the Court cited People v. Gould, 54 Cal.2d 621, 626, 7 Cal.Rptr. 273, 354 P.2d 865, 867 (1960) as follows: " . . . [T]he earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind." Evidence of pre-trial identifications is even more important where, as here, the trial takes place seventeen months after the crime was committed, since such a time lapse would invariably strengthen the possibility of a mistaken identification in the minds of the jurors. Indeed, in United States v. Hallman, 142 U.S.App.D.C. 93, 439 F.2d 603, 604 (1971), the court stated that evidence of a pre-trial identifica-

---

5. The test for the admissibility of evidence of other offenses as laid down by *Stirone* has been reiterated by this court on numerous instances. See, *e. g.,* United States ex rel. Choice v. Brierley, 460 F.2d 68, 71 (3 Cir. 1972); United States v. Weber, 437 F.2d 327, 332–333 (3 Cir. 1970); United States v. Weiler, 385 F.2d 63, 67 (3 Cir. 1967). Accord, Dirring v. United States, 328 F.2d 512 (1 Cir. 1964), cert. denied, 377 U.S. 1003, 84 S.Ct. 1939, 12 L.Ed.2d 1052 (1964);

United States v. Hallman, 142 U.S.App. D.C. 93, 439 F.2d 603 (1971).

6. Commonwealth v. Allen, 448 Pa. 177, 183, 292 A.2d 373, 376 (1972).

7. See Commonwealth v. Allen, *supra* note 6, at 181 n. 2, 292 A.2d at 375 n. 2.

8. 2 Wright, Federal Practice and Procedure § 410 at 132 (1969). See Other Crimes Evidence at Trial: Of Balancing and Other Matters, 70 Yale L.J. 763 (1961).

tion was "more meaningful to the jury than the more ritualized in-court identification." Given the great need to substantiate the witnesses' in-court identifications here,[9] we agree with the court in *Hallman* that "[t]he importance that a jury know of the reality of a fair pretrial identification weighs with more substance in the scales of justice than [the] speculative possibility that the jury may conjecture [that the] defendant was involved in some other offense." *Hallman* at 605.

We are not faced with a situation in which a "mugshot" itself was introduced into evidence, as occurred in Barnes v. United States, 124 U.S.App.D.C. 318, 365 F.2d 509 (1966), nor one in which the word "mug-shot" was even mentioned, as was the case in United States v. Reed, 376 F.2d 226 (7 Cir. 1967). The inference of Hines' criminal record, the tendency of the identification evidence to prejudice, is much weaker here, and it is at most speculative that such an inference could have had any appreciable effect on the verdict of the jury. Clearly then, the probative value of the evidence in question overbalances its potentiality for prejudice.

## II. *The Government's Failure to Call a Witness.*

The government did not call as a witness Mrs. Darlene Brooks, who, along with three other witnesses, had identified Hines as one of the bank robbers in Hines' prior trial on the same charges. Hines' counsel commented on this fact to the jury in his closing argument. The court charged the jury in this regard as follows: "The law does not require the prosecution to call as witnesses all persons who may have been present at any

time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. . . .

"However, in judging the credibility of the witnesses who have testified, and in considering the weight and effect of all evidence that has been produced, the jury may consider failure to call other witnesses or to produce other evidence shown by the evidence in the case to be in existence and available.

"Mrs. Brooks was not called to testify in this case and Mr. Carson would argue an inference from that that her testimony would be unfavorable; however, this was a decision, presumably, that the Government made, and I would point out that her testimony was recorded and could have been offered, as there are methods of proving former testimony, so that this, in the court's view, is something that you should take into account when Mr. Carson argues, as he did, that there is an inference that the testimony would be unfavorable. . . ."[10]

Hines contends that the trial court erred since the charge erased the inference that Mrs. Brooks' testimony would have been unfavorable to the government, an inference which Hines claims he was entitled to.

 It must first be pointed out that Hines failed to interpose a timely objection to the charge pursuant to Rule 30 of the Federal Rules of Criminal Procedure.[11] Given the failure to object, this court can take notice of the asserted error only if it constituted plain error (F.R.Crim.P. 52(b);[12] United States v. Chicarelli, 445 F.2d 1111 (3 Cir. 1971)) affecting substantial rights and involved a "manifest miscarriage of

9. No other evidence to corroborate identity was found in this case, such as fingerprints, clothing worn in the robbery, or stolen money.

10. Transcript of Second Trial, Feb. 26, 1971 at 221–222.

11. F.R.Crim.P. 30 provides as follows: "No party may assign as error any portion of the charge or omission therefrom

unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

12. Rule 52(b) provides: "Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

justice." United States v. Provenzano, 334 F.2d 678, 690 (3 Cir. 1964), cert. denied, 379 U.S. 947, 85 S.Ct. 440, 13 L. Ed.2d 544 (1964).

The charge in question here did not remove the possible unfavorable inference. The trial court merely instructed the jury that in considering the failure of the government to produce Mrs. Brooks as a witness, and the inferences flowing therefrom, they should take into account the fact that there were means of proving her former testimony.[13] The jury could still draw an inference unfavorable to the government, and in effect was only advised to keep in mind that the government did not have it particularly within its power to produce the testimony of Mrs. Brooks. That this is a relevant factor is apparent from Graves v. United States, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893): " . . . The rule, even in criminal cases, is that, if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable."

Moreover, even if the charge did erase an inference unfavorable to the government, which it did not, Hines was not deprived of substantial rights since no such inference properly could be drawn here. The applicability of a "missing witness" inference is based on the "simple proposition that if a party who has evidence which bears on the issues fails to present it, it must be presumed that such evidence would be detrimental to his cause. 2 Wigmore, Evidence § 285 (3d ed.). For obvious reasons of practicality, evidence which would be merely cumulative could not raise such a pre-

sumption." United States v. Restraino, 369 F.2d 544, 547 (3 Cir. 1966). Clearly every absent but producible witness possessing some knowledge of the facts need not be made the subject of the inference. Often all that can be inferred is that the witness' testimony would not have been *helpful* to a party, not that the testimony would have been *adverse*. Burgess v. United States, 142 U.S.App. D.C. 198, 440 F.2d 226, 233 (1970). The witness must appear to have "special information relevant to the case, so that his testimony would not merely be cumulative." McCormick, Evidence § 249 at 534 (1954); adopted by this court in *Restraino*.

In the case at bar the facts do not justify an inference that Mrs. Brooks' testimony would have been unfavorable to the government's case. During Hines' first trial, Mrs. Brooks made a positive identification of him which was not shaken by vigorous cross-examination. Her description of the robber varied somewhat from that of the other witnesses,[14] and the description she had given to the FBI was of a person four or five inches taller and about 50 pounds heavier than the appellant.[15] These inaccuracies in her description may explain the government's failure to have Mrs. Brooks testify. But in light of her testimony at the first trial which as a whole clearly favored the government, we think it unreasonable to infer that Mrs. Brooks' testimony would have been adverse to the government in the second trial. It is more likely that her testimony would only have been inferior to that of the other four identification witnesses called and thus less helpful to the government. As the court said in Burgess v. United States, *supra* at 234, "Though he might not have been helpful

---

13. Were Mrs. Brooks unavailable at the time of trial, her prior testimony could have been introduced under the recorded testimony exception to the hearsay rule. California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); United States v. DeSisto, 329 F.2d 929 (2 Cir. 1964).

14. Mrs. Brooks stated that the robber was wearing a white coat or butcher's jacket and dark pants (Transcript of First Trial at 56–57) while other witnesses stated he had on white coveralls (Transcript of Second Trial at 52, 68, 93).

15. Transcript of First Trial at 52–53.

to the Government, the failure of the Government to put him on the stand did not authorize an inference . . . that if he testified he would have done so unfavorably to the Government." With four other bank employees serving as witnesses to describe the robbery and identify Hines, Mrs. Brooks cannot be said to have possessed "special information" and her testimony would only have been cumulative.

Hines was thus not prejudiced by the trial court's instruction which, as we have said, merely advised the jury of a factor to take into account when considering defense counsel's argument concerning an unfavorable inference. If a party intends to argue to the jury for an inference to be derived from the absence of a witness, "an appropriate instruction should be given defining for the jury the conditions under which the inference might be properly drawn. Only by such a practice can the . . . jury be informed sufficiently to enable it to intelligently discharge its function in that regard." Gass v. United States, 135 U.S.App.D.C. 11, 416 F.2d 767, 776 (1969).

In view of the foregoing, it is clear that neither plain error nor a miscarriage of justice are even remotely supportable.

### III. *Ineffective Assistance of Counsel.*

 Hines contends that he was denied his right to effective assistance of counsel as guaranteed by the Sixth Amendment through his trial counsel's failure to call Mrs. Brooks as a witness and failure to file a pre-trial motion to suppress identification testimony.

" . . . [T]he standard of adequacy of legal services as in other professions is the exercise of the customary skill and knowledge which normally prevails at the time and place." Moore v. United States, 432 F.2d 730, 736 (3 Cir. 1970) (Footnotes omitted). The burden is on Hines to demonstrate that his counsel gave him inadequate representation. United States v. Varga, 449 F.2d 1280 (3 Cir. 1971). We find that he has not met this burden and that the services rendered on Hines' behalf were well within the range of "normal competence."

The claim of ineffective assistance of counsel based on trial counsel's failure to call Mrs. Brooks as a witness is frivolous. As stated earlier, Mrs. Brooks' testimony at Hines' first trial favored the government's case. Hines' trial counsel clearly acted reasonably in not calling a witness who had earlier positively identified his client as one of the bank robbers.

With regard to the trial counsel's failure to make a pre-trial motion to suppress identification testimony, the issue raised is similar to that presented where an accused's counsel fails to attempt to suppress evidence on possible Fourth Amendment grounds (illegal search and seizure). As was said in Harried v. United States, 128 U.S.App.D.C. 330, 389 F.2d 281, 286 (1967): "We reject the notion that it is defense counsel's duty to 'make every motion in the book' in the hope that one may succeed." In United States ex rel. Boucher v. Reincke, 341 F.2d 977, 981 (2 Cir. 1965), "[t]here were no circumstances revealed to the Public Defender by Boucher [the defendant] or anyone else which indicated that an illegal search and seizure had been made by the police." The court thus held that the defendant had not received inadequate representation on account of the Public Defender's failure to raise the Fourth Amendment issue, and stated: "The Constitutional requirement of the effective assistance of counsel does not require that subsequent examination disclose that every conceivable avenue of evidence has been totally explored and every possible theory of defense has been pursued to judgment." *Boucher* at 981.

Similarly, United States ex rel. Watson v. Mazurkiewicz, 326 F.Supp. 622, 625–626 (E.D.Pa.1971), held that "any normally competent attorney would advise that such a motion be filed if he

were aware that the Fourth Amendment claims would probably succeed or present a close question to the trial court." (Footnotes omitted). Absent facts known to Hines' trial counsel which at least would provide a basis for a belief that a motion to suppress the identification evidence could succeed, we cannot find that his representation was below the standard of normal competence. Effective assistance does not demand that every possible motion be filed, but only those having a solid foundation.[16]

Hines' contentions are without merit, and accordingly, the judgment of conviction will be affirmed.

16. The direct testimony and cross-examination of the government witnesses indicates the fairness of the procedure used in the pre-trial photographic identifications. Transcript of Second Trial at 28, 44–47, 55–56, 70, 97–98, 120–121. Although minor discrepancies between Hines' actual description and the descriptions given to FBI agents by the government witnesses do raise a hint of suggestibility with regard to the pre-trial identifications, the totality of the circumstances clearly demonstrates that there was "little chance that the procedure utilized led to misidentification." Simmons v. United States, 390 U.S. 377, 385, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). See United States v. Higgins, 458 F.2d 461, 465 (3 Cir. 1972), for the seven factors to be considered in deciding suggestiveness. In light of these criteria, no substantial basis for a pre-trial motion to suppress identification testimony existed in the present case.