UNITED STATES of America, Appellee,

v.

Michael BUSIC, Appellant.

UNITED STATES of America, Appellee,

v.

Anthony LA ROCCA, Jr., Appellant.

Nos. 77–1375 and 77–1376.

United States Court of Appeals,
Third Circuit.

Argued Oct. 21, 1977.

Decided Jan. 5, 1978.

As Amended Feb. 15, Feb. 24, and
June 8, 1978.

Certiorari Dismissed April 17, 1978.
See 98 S.Ct. 1631.

On Rehearing Dec. 12, 1978.

Samuel J. Reich, Pittsburgh, Pa., for appellant Busic.

Michael A. Litman, Hickton, Dean, Litman & Tighe, Pittsburgh, Pa., for appellant La Rocca.

Blair A. Griffith, U. S. Atty., Western District of Pennsylvania by Thomas A. Crawford, Jr., Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Before VAN DUSEN and ROSENN, Circuit Judges, and STERN,* District Judge.

## OPINION OF THE COURT

STERN, District Judge.

On this appeal we must decide whether a defendant may receive consecutive sentences for the crime of assault with a dangerous weapon [18 U.S.C. § 111] and the crime of use of a firearm to commit that felony [18 U.S.C. § 924(c)(1)], where the dangerous weapon used in the assault is a firearm. We hold that such sentencing violates the double jeopardy clause and we remand La Rocca's case to the district court for re-sentencing.

Defendants also cite as error the trial court's refusal to sever for trial those counts of the indictment which required proof of defendants' prior felony convictions. We hold that, on the facts of this case, the refusal to sever those counts was harmless error. The other challenges raised by defendants, including the contention that the trial court erred in refusing to give a "missing witness" instruction, we find to be without merit and, thus, we affirm defendants' convictions in all other respects.

### I.

As the record at trial reveals, Michael Busic and Anthony La Rocca were involved in a conspiracy to distribute drugs which turned into an attempt to rob "front money" from an undercover agent. This attempted robbery culminated in a shootout with federal agents.

On this appeal, we must view the evidence in the light most favorable to the government. *See Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Thus viewed, the evidence might be summarized as follows. Charles D. Harvey, an agent of the Drug Enforcement Administration, first met Busic and La Rocca on May 7, 1976 at the home of Richard Hervaux, a government informant. At this time, defendants agreed with Harvey that Harvey would go to Florida to purchase drugs from one of the defendants' suppliers for re-distribution in the Pittsburgh area. (Tr. 21–22). Several days later, Harvey again met with the defendants and received samples of the marijuana and cocaine which he was to purchase from defendants' Florida source. (Tr. 29–30). The next day, after Harvey had arranged for his trip to Florida, La Rocca called him and insisted on seeing some "front money". A meeting was arranged for the following day in the parking lot of the Miracle Mile Shopping Center in Monroeville, Pennsylvania. (Tr. 32–33).

As agreed, but having arranged for surveillance, Harvey went to the shopping center with $30,000 in cash. (Tr. 34–35). There he saw Busic and La Rocca in La Rocca's car. (Tr. 36). La Rocca entered Harvey's car, and the two drove to the other side of the parking lot. (Tr. 39). As Harvey removed the money from the trunk, La Rocca reached for his gun. Harvey ran, but La Rocca caught him and pointed his gun at Harvey's chest. Harvey then gave a pre-arranged signal to the surveillance agents. As the agents began to converge on the scene, La Rocca fired at Harvey, and missed. La Rocca then fired two shots at the vehicle containing agents William Alfree and William Petraitis, and two shots at the vehicle containing agent John Macready. (Tr. 40). He was immediately arrested and disarmed.

Busic, who had been leaning on a nearby car during the shootout, was also arrested and disarmed, at which time he exclaimed, "Just remember that I didn't shoot at anybody and I didn't draw my gun." He was searched and a pistol was found in his belt; a search of La Rocca's car uncovered an attache case containing another pistol and a plastic box containing ammunition. (Tr. 41). When the car was further searched the following day, government agents found yet another pistol under the driver's

---

* Herbert J. Stern, United States District Judge for the District of New Jersey, sitting by designation.

seat and another box of ammunition in the glove compartment. (Tr. 44).

In addition to evidence regarding the conspiracy and subsequent shootout, the government also introduced in its case-in-chief evidence of defendants' prior convictions for the purpose of proving that defendants were convicted felons and, thus, had received firearms in violation of 18 U.S.C. § 922(h). Counsel for the defendants stipulated that Busic and La Rocca had been jointly convicted in 1973 for assault on two federal officers, theft of government property and use of a firearm to commit these felonies. These convictions were introduced through the testimony of Agent Petraitis and the actual certificates of conviction, although the government was not permitted to elicit the facts underlying these convictions. (Tr. 195).

Defendants raised the defense of entrapment. Busic took the stand on his own behalf, claiming that Hervaux had initiated the scheme to rob Harvey and further claiming that, despite his and La Rocca's efforts to back out of the scheme, Hervaux had urged them on. (Tr. 388–414). La Rocca did not himself testify, but called his common-law wife, Janna K. Sam, who testified that La Rocca avoided the repeated phone calls he received from Hervaux during the time period in question. (Tr. 470–472). In addition, defendants attempted to show the unavailability of Richard Hervaux, through the testimony of their court-appointed investigator, Fred Koerhner, who testified that he had twice attempted, unsuccessfully, to serve Hervaux. (Tr. 381). At this time, the government offered itself to serve Hervaux, but defense counsel declined the offer. (Tr. 385–386). Defendants requested, and were denied, a "missing witness instruction" which would have instructed the jury that it was entitled to draw an adverse inference based on the government's failure to call Hervaux to the stand.

The jury convicted defendants of conspiring to distribute drugs, unlawfully distributing narcotics, assaulting federal officers with a dangerous weapon, and receiving firearms while being convicted felons. In addition, each was convicted under a different subsection of 18 U.S.C. § 924: La Rocca for having *used* a firearm to commit the drug conspiracy and assaults on federal officers, in violation of § 924(c)(1); Busic for having *carried* a firearm unlawfully during the commission of these felonies, in violation of 18 U.S.C. § 924(c)(2). The sentencing judge imposed a five-year sentence on each defendant on the narcotics counts, five years on the assault with a dangerous weapon counts, and twenty years under the § 924 counts—all to run consecutively to each other—for a total of 30 years for each defendant.

## II.

Defendants' first and most formidable challenge is directed at 18 U.S.C. § 924. That statute penalizes a person who either:

(1) uses a firearm to commit any felony for which he may be prosecuted in a court of the United States, *or*

(2) carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States.

18 U.S.C. § 924(c) (Emphasis supplied). The statute further provides for a mandatory sentence of one-to-ten years for first offenders, and two-to-twenty-five years for subsequent offenders.[1]

---

1. The full text of 18 U.S.C. § 924(c) provides as follows:

(c) Whoever—

(1) uses a firearm to commit any felony for which he may be prosecuted in a court of the United States, or

(2) carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States,

shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to a term of imprisonment for not less than two nor more than twenty-five years and, notwithstanding any other provision of

Busic was indicted, convicted and sentenced under subsection (2) of this statute for having carried a firearm unlawfully during the commission of two federal felonies: drug conspiracy and assault on federal officers; La Rocca was indicted, convicted and sentenced under subsection (1) for having used a firearm to commit these same felonies. In addition, each defendant received consecutive sentences under the enhanced penalty provision of 18 U.S.C. § 111 for having assaulted federal officers with a "dangerous or deadly weapon." [2]

### A.

Defendants argue that conspiracies to commit drug offenses (21 U.S.C. § 846) and assaults on federal officers (18 U.S.C. § 111) are not "felonies" within the meaning of 18 U.S.C. § 924(c). We disagree.

■ Section 924, Title 18, is part of the Gun Control Act of 1968, enacted in the wake of the political assassinations of that decade. The purpose of that legislation was "to strengthen Federal controls over interstate and foreign commerce in firearms and to assist the states effectively to regulate

firearms traffic within their borders." H.Rep.No.1577, 90th Cong. 2d Sess., *reprinted in* (1968) U.S.Code Cong. and Admin. News pp. 4410, 4411. Toward that end, Congress enacted 18 U.S.C. § 924(c)(2) which makes it a federal crime to possess an unregistered firearm, federal jurisdiction being predicated upon commission of a federal felony while in possession of such a weapon. The statutory scheme shows that Congress was concerned not only about persons who possess unregistered firearms, but also about persons who, although in lawful possession of a firearm, use it to commit a federal felony. *See* 114 Cong.Rec. 22235–7 (1968). Thus, in subsection (1) of the statute, Congress created a crime separate from that created in subsection (2), making it a federal crime to use a firearm—whether registered or unregistered—to commit a federal felony.

■ In view of the broad objectives of the legislation, we cannot agree with defendants that the term "felony" in § 924(c)(1) should be narrowly construed so as to exclude narcotics conspiracies and assaults on federal officers.[3] The construc-

---

law, the court shall not suspend the sentence in the case of a second or subsequent conviction of such person or give him a probationary sentence, nor shall the term of imprisonment imposed under this subsection run concurrently with any term of imprisonment imposed for the commission of such felony.

**2.** Title 18 U.S.C. § 111 provides for a sentence of up to three years for simple assault; up to ten years where an assault is committed with a "deadly or dangerous weapon":

Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

**3.** That Congress intended the term "felony" to be broadly construed finds support in the legislative history of § 924. During the House debates on the bill, Representative Casey proposed a version that would have limited the operation of the statute to certain enumerated violent crimes. *See* 114 Cong.Rec. 21061–3;

21765–5. The rejection of this version suggests that Congress did not wish to thus limit the statute. Indeed, in keeping with the ambitious purposes of the statute, § 924 has been applied to a broad range of felonies. *See, e. g., United States v. Howard,* 504 F.2d 1281 (8th Cir. 1974) (counterfeiting); *United States v. Ramirez,* 482 F.2d 807 (2nd Cir.), *cert. denied,* 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 475 (1973) (narcotics offenses conspiracy); *United States v. Sudduth,* 457 F.2d 1198 (10th Cir. 1972) (sale of heroin).

The only suggestion to the contrary is the remarks of Representative Poff, the bill's sponsor, that:

For the sake of legislative history, it should be noted that my substitute is not intended to apply to Title 18, Sections 111, 112, or 113 which already define the penalties for use of firearms in assaulting officers, with Sections 2113 or 2114 concerning armed robberies of the mail or banks, with Section 2231 concerning armed assaults upon process servers or with Chapter 44 which defines other felonies.

114 Cong.Rec. 23904–5 (1968). Although a strong statement by the sponsor of a bill made expressly for the sake of legislative history carries great weight, it is not necessarily dis-

tion urged by defendants would limit the ambit of subsection (2) whose purpose was to reach the unlawful possession of all firearms, with commission of a federal felony being merely a jurisdictional linchpin. Accordingly, we hold that § 924 encompasses the federal felonies with which defendants were charged.

### B.

A different question is posed, however, as to whether the double jeopardy clause protects a defendant from being convicted both of the crime of use of a dangerous weapon to assault a federal officer (18 U.S.C. § 111) and use of a firearm to commit that felony [18 U.S.C. § 924(c)(1)]. On this, there appears to be some disagreement among the circuits.

In *United States v. Eagle*, 539 F.2d 1166 (8th Cir. 1976), *cert. denied*, 429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 563 (1977), defendant, an Indian, was convicted of assault with a dangerous weapon upon the person of another Indian on a reservation, in violation of 18 U.S.C. § 1153. The defendant was also convicted for use of a firearm to commit the offense, as proscribed by 18 U.S.C. § 924(c)(1). The Eighth Circuit avoided the double jeopardy issue, holding as a matter of statutory construction that Congress did not intend Section 924 to encompass statutes that already provide for added penalties where weapons are used. In so holding, it relied on the remarks of Representative Poff, the bill's sponsor, that § 924 should not be construed to encompass felonies for which there is already an added penalty for the use of a weapon. *See*, 114 Cong.Rec. 23904-5 (1968).

In *United States v. Crew*, 538 F.2d 575 (4th Cir. 1976), *cert. denied*, 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127 (1977), defendant was convicted under 18 U.S.C. § 2113, the federal bank robbery statute which, like 18 U.S.C. § 111, provides for an enhanced penalty where a "dangerous weapon" is used. He was also convicted under § 924(c)(1) for

using a firearm to commit that felony, and under § 924(c)(2) for carrying a firearm unlawfully during the commission of that felony. He received consecutive sentences under each of these three counts. The Fourth Circuit held that conviction and consecutive sentences under both § 2113 and § 924(c)(1) did not violate the double jeopardy clause because each statute requires proof of different elements:

> In order to sustain a conviction under Section 2113(d) the government must establish that the perpetrator assaulted a person, or jeopardized the life of a person, by using a dangerous weapon or device during the commission of the robbery. In comparison, in order to sustain a conviction under Section 924(c) the government must establish that the perpetrator used or carried a firearm during the commission of a felony. The appellants would have us equate "using a dangerous weapon or device" with "used or carried a firearm" and find that the prohibition against double jeopardy has been violated. However, it is clear that Congress never intended to equate these terms.
>
> The passage of Section 924(c) was a Congressional reaction to demands for "gun control" in the wake of political assassinations. It is a narrowly drawn statute intending to discourage a felon from using or carrying a firearm, and does not encompass the use of non-explosive weapons. On the other hand, Section 2113(d) punishes a felon for the use of any weapon or device during the course of a bank robbery which jeopardizes the lives of others. Therefore, the offenses are not identical in law and fact, and the separate sentences under Sections 2113(d) and 924(c) are affirmed.

*Id.*, at 577-578.

A somewhat different approach was taken by a district court in *United States v. Hearst*, 412 F.Supp. 877 (N.D.Cal.1976) in ruling on a motion to dismiss an indictment charging both armed bank robbery and use

---

positive and we need not narrowly construe this statute—which by its language and legisla-

tive history was obviously intended to be broad in its reach—on the basis of this statement.

of a firearm to commit that felony. Although it denied the motion, the court indicated that consecutive sentences under both counts might contravene the constitutional guarantee against double jeopardy:

> . . . [I]t is a settled principle of law that two separate offenses arising out of the same act or transaction may be charged where "each [statutory] provision requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 . . . (1932). This standard is satisfied by the two offenses charged here, for the reason that the first requires the use of *any* dangerous weapon in the robbery of a *bank*, whereas the second specifically requires the use of a *firearm* in the commission of *any* felony.

> It is, of course, an altogether different question whether the defendant may or should be *punished* twice through consecutive sentences for the conviction of two offenses arising out of a single act. In denying the motion to dismiss either indictment for violation of the double jeopardy clause the Court does not intend to foreclose the defendant from raising the question of double punishment should she be convicted under both counts of the indictment and the Court be required to pass sentence. In that eventuality the Court will be open to any arguments the defendant may have against compounding sentences for these alleged offenses.

Id., at 878–879. (Emphasis in original).

We agree that an indictment charging violation of both sections 111 and 924(c)(1) does not on its face implicate the double jeopardy clause: § 111 punishes *assault* with a *deadly or dangerous weapon*— which could be a knife or an explosive as well as a firearm; § 924(c)(1) punishes the use of a *firearm* to commit a *felony*—which could be any felony. However, where the deadly weapon used in a § 111 charge *is* a firearm and the felony charged in § 924(c)(1) count *is* an assault and the government does not prove additional elements for either offense, it is clear that a defendant will be twice punished for the identical offense if he is sentenced under both counts.

Multiple punishment for the same offense at a single trial is forbidden by the double jeopardy clause. *Ex Parte Lange*, 85 U.S. (18 Wall.) 163, 173, 21 L.Ed. 872 (1873). See *generally* Note, Twice in Jeopardy, 75 Yale L.J. 262 (1965). In a line of cases, the Supreme Court has continued to assume the validity of this principle, but has generally found the misconduct at issue to constitute distinct offenses. *See, e. g., Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), *reh. denied*, 358 U.S. 858, 79 S.Ct. 13, 3 L.Ed.2d 92 (1958); *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Morgan v. Devine*, 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153 (1915); *Gavieres v. United States*, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911); *Burton v. United States*, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057 (1906). The test enunciated by the Court is whether "each provision requires proof of an additional fact which the other does not." *Blockburger v. United States, supra*, 284 U.S. at 304, 52 S.Ct. at 182. See also, *United States v. Kenny*, 462 F.2d 1205 (3rd Cir.), *cert. denied*, 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972); *United States v. Johnson*, 462 F.2d 423 (3rd Cir. 1972), *cert. denied*, 410 U.S. 937, 93 S.Ct. 1396, 35 L.Ed.2d 602 (1973).[4]

---

4. For the sake of clarity, we would note that the principles of double jeopardy relied on herein are distinguishable from the principles relied on by the Supreme Court in ruling on the propriety of consecutive sentencing under the subsections of the bank robbery statute, 18 U.S.C. § 2113. In *Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), the Court held as a matter of *statutory construction* that consecutive sentences could not be imposed under the subsections of that statute.

Following *Prince*, we held in *United States v. Corson*, 449 F.2d 544 (3rd Cir. 1971) (en banc), that where a defendant is convicted under more than one subsection of § 2113 the sentencing judge should impose a general sentence on all counts not to exceed the maximum permissible sentence which carries the greatest maximum sentence. *See generally*, Note, *The Federal Bank Robbery Act—The Problem of Separately Punishable Offenses*, 18 Wm. & Mary L.Rev. 101 (1976). Also distinguishable is the "merg-

On the facts of this case, it is clear that the elements proven under the § 111 counts (Counts 6 and 7) and the § 924(c)(1) count (Count 19) were identical: under Counts 6 and 7 the government proved assault on federal officers with a dangerous weapon which was a firearm. Under Count 19, the government proved use of the identical firearm to commit a felony which was the assault on the identical federal officers. Accordingly, we hold that when La Rocca was sentenced under Count 19 consecutively to Counts 6 and 7, he was twice punished for the same conduct. We remand this case to the district court at which point the government must move for resentencing under either Count 19 or Counts 6 and 7.[5] The trial court may not impose a more severe sentence under either count. To do so would ignore the clear intent of this opinion and punish the defendant twice for the same offense. In future cases, where conviction is obtained under both § 111 and § 924(c)(1), and it is determined that the "deadly weapon" charged in the § 111 count is the firearm charged in the § 924(c)(1) count, and that the "felony" charged in the § 924(c)(1) count is the assault charged in the § 111 count, the court may sentence the defendant under one of the sections or the other, but may not sentence under both sections.

### C.

■■■ While prosecution under the *use* provision of § 924(c)(1) may, as in this case, create double jeopardy problems when coupled with a § 111 count, prosecution under

the *carrying* provisions of § 924(c)(1) will not. The latter subsection contains an element not required to be proved under § 111: the government must prove that the firearm was carried "unlawfully." As we read it, the term "unlawfully" requires the government to prove that the defendant's possession of the firearm violated federal, state or local registration laws. *See, United States v. Rivero*, 532 F.2d 450 (5th Cir. 1976); *United States v. Howard*, 504 F.2d 1281 (8th Cir. 1974); *United States v. Ramirez*, 482 F.2d 807 (2nd Cir.), *cert. denied*, 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 475 (1973). Therefore, as to Busic, consecutive sentences under § 111 and § 924(c)(2) were permissible.[6]

### III.

■■■ Defendants also cite as error the refusal of the district court to sever those counts of the indictment which charge them with receiving firearms while being convicted felons in violation of 18 U.S.C. § 922(h).[7] The indictment actually set forth in these counts that both defendants had been convicted in 1973 for assaulting two federal officers, theft of government property, and use of a firearm to commit these felonies and, in addition, that La Rocca had also been convicted in 1970 of trafficking in machine guns, assault and battery, pointing a deadly weapon and possession of narcotics. On oral argument in this Court, however, it was agreed that the indictment was never shown to the jury.

---

er" theory wherein a lesser included misdemeanor is said to merge into a felony thus permitting a sentence on only the latter. *See generally*, 22 C.J.S. Criminal Law § 10, at 42–6.

**5.** While we recognize that La Rocca was charged in the § 924 count with using a firearm to commit both assault and conspiracy, we cannot sustain his § 924 sentence based on commission of conspiracy. Since both conspiracy and assault were charged as the underlying felonies in Counts 6 and 7, we cannot tell on which the jury relied.

**6.** We are mindful of the potential injustice caused by our decision today: La Rocca, who actually shot at the federal agents, may receive

a lesser sentence than Busic, who was only vicariously liable for these assaults. However, the district court has authority to cure this disparity on a motion under Fed.R.Crim.P. 35.

**7.** 18 U.S.C. § 922(h) provides in pertinent part:

(h) It shall be unlawful for any person—
(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

. . . . .

to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Defendants argue that the district court's refusal to sever the § 922 counts resulted in admission into evidence of their prior convictions in the government's case-in-chief which prejudiced them in the trial of the other offenses charged.

The question of severing for trial counts requiring proof of prior convictions from other counts which do not permit such proofs has received little attention in the circuits.[8] In *United States v. Park*, 531 F.2d 754 (5th Cir. 1976), the defendant had been charged in a two-count indictment with a substantive narcotics offense and with receiving firearms while being a convicted felon. On appeal, he contended that he had been prejudiced at trial by joinder of these counts because it enabled the government to bring to the jury's attention the fact that he was a convicted felon. The Fifth Circuit held that the trial court's refusal to sever was not error because defendant's prior conviction, for having knowingly manufactured drugs would, in any event, have been admissible on the other count. *See also, United States v. Abshire*, 471 F.2d 116 (5th Cir. 1972). A novel approach to this problem was adopted by the district court in *United States v. Franke*, 331 F.Supp. 136 (D.Minn.1971). There, on a motion for severance, the district court granted defendant a two-stage trial, whereby the jury, having reached a verdict on the other counts, would then proceed to consider the counts requiring proof of prior convictions.

The defendants urge that the district court erred in refusing to sever the counts alleging violation of 18 U.S.C. § 922(h), inasmuch as at the outset of the trial the district court had no way of knowing that the prior convictions alleged in the § 922(h) counts might otherwise have been admissi-

ble on the other counts. On the facts of this case we find that the district court did not commit reversible error since the defendants raised the defense of entrapment at trial and the evidence of their prior convictions was admissible under Rule 404(b), Federal Rules of Evidence, to rebut this defense by proving predisposition. In addition, prejudice was minimized in this case: the jury was never shown the indictment, and the government was not permitted to elicit the factual basis of these convictions. For these reasons, we hold that the refusal to sever was harmless error.

 Nevertheless, we think that in ruling on a pre-trial motion to sever the district court should determine whether evidence of the prior convictions would be independently admissible on the other counts. If it is determined that the convictions would not be admissible on the other counts—that were these counts to be tried alone the jury would not hear this evidence—then severance should be granted.[9] In addition, we think that, in framing an indictment, the better practice dictates that the government should not set forth the details of defendants' actual convictions, but merely allege that the defendant is a convicted felon. If Defendant desires the particulars, he may, of course, so move for them. See Fed.R.Crim.P. 7.

## IV.

Defendants further contend that the trial court committed reversible error in refusing to instruct the jury that it might draw an adverse inference from the government's failure to call its informer, Richard Hervaux. Despite the fact that the government actually offered to serve Hervaux,

---

**8.** Although little appellate attention has been directed to this issue, it appears that it has been the practice of some district courts to sever such counts. *See e. g., United States v. Napier*, 518 F.2d 316 (9th Cir.), *cert. denied*, 423 U.S. 895, 96 S.Ct. 196, 46 L.Ed.2d 128 (1975); *United States v. Roberts*, 503 F.2d 453 (8th Cir. 1974).

**9.** Of course, we do recognize the difficulties inherent in such pre-trial determinations.

Nevertheless, if the government chooses to join such counts, it must be prepared to justify the joinder to the trial judge by some showing that the prior convictions would be admissible even absent joinder. By the same token, in moving for severance of these counts, a defendant may be required to reveal some of his trial strategy, as to an entrapment defense or the like, in the resolution of his motion for severance.

defendants contend that the burden of calling him rested on the government, and that the government's failure to do so entitled defendants to a "missing witness" instruction. We agree with the district court that defendants were not entitled to the requested charge.

■ The basis of the "missing witness" inference is that, where a party fails to call an available witness whose testimony could be expected to favor him, a natural inference arises that that witness would have exposed facts *unfavorable* to that party. *See, Graves v. United States,* 150 U.S. 118, 121, 14 S.Ct. 40, 37 L.Ed. 1021 (1893); *Burgess v. United States,* 142 U.S.App.D.C. 198, 440 F.2d 226 (1970); 2 Wigmore, Evidence, 162 § 289 (3d Ed. 1940). This Court has on several occasions addressed the applicability of this inference. Thus, in *United States v. Jackson,* 257 F.2d 41 (3rd Cir. 1958), we reversed a conviction based on the trial court's refusal to permit defense counsel to comment on the government's failure to produce its key informant, a man known only as "Sarge". In *United States v. Restaino,* 369 F.2d 544 (3rd Cir. 1966), however, we held that the government's failure to produce defendant's co-defendants who had pleaded guilty, and were known to and available to both sides, did not give rise to any inference as to whom their testimony could be expected to favor. More recently, in *United States v. Hines,* 470 F.2d 225 (3rd Cir. 1972), *cert. denied,* 410 U.S. 968, 93 S.Ct. 1452, 35 L.Ed.2d 703 (1973), we held that the government's failure to call an identification witness would also not give rise to any inference. There, after stating that its application requires the witness to have special, non-cumulative information relevant to the case, we went on to note the weakness of the missing witness inference:

: Clearly, every absent but producible witness possessing some knowledge of the facts need not be made the subject of the inference. Often all that can be inferred is that the witness' testimony would not have been *helpful* to a party, not that the testimony would have been *adverse.*

470 F.2d at 230. (Emphasis in original).

As we noted in *Hines,* a party's failure to call a witness does not necessarily imply that the witness's testimony would have been unfavorable to that party. Although Hervaux may have had special knowledge relevant to this case, we think other considerations outweigh this reason for giving the missing witness instruction. Every experienced trial lawyer knows that the decision to call a witness often turns on factors which have little to do with the actual content of his testimony. Considerations of cumulation and jury fatigue may preclude calling a witness who is entirely helpful; calculations that a witness may help a lot but hurt a little may compel restraint when counsel believes that his burden is already met. Then, too, questions of demeanor and credibility, hostility, and the like may influence the government not to produce a witness whose testimony might be entirely harmful to the defendant.[10] And, of course, as we noted in *Hines,* in many instances, a witness's testimony might have been neither *helpful* nor *adverse* to the party who failed to call him. Indeed, cases such as this one—where both parties fail to call an available witness—shatter the myth that an absent witness's testimony might be expected to be particularly favorable to either side.

■ Accordingly, we hold that where neither the government nor the defendant calls a witness who is available to both, the "missing witness" instruction does not properly lie. *See, United States v. Kenney,* 500 F.2d 39 (4th Cir. 1974); *United States v. Chase,* 372 F.2d 453 (4th Cir.), *cert. denied,* 387 U.S. 907, 87 S.Ct. 1688, 18 L.Ed.2d 626 (1967); *United States v. Higginbotham,* 451 F.2d 1283 (8th Cir. 1971).[11] Under these

---

10. We cannot help but note that the defendant who in summation asks the question, "Why didn't the government call 'X'?" relies on the inability of the government to respond by advising the jury of any of these considerations, all of which are outside the record and some of which stem from the subjective judgment of the prosecutor.

11. The basis for denying an instruction under these circumstances was perhaps best stated by Judge Robb in his concurring opinion in

circumstances, no inference as to the content of the missing testimony is possible since both sides may be presumed to wish to call a favorable witness, while both would not wish to call one who was adverse. This is not to say that the defendant does not have the absolute right to stand mute or to rest on the government's failure to produce affirmative *evidence* to substantiate any necessary elements of the offense charged. But it is one thing to rely on the government's failure of proof, and quite another to argue the existence of affirmative evidence, which the jury did not hear, inferred from the fact that a witness was not called. Thus, we agree with the district court that, under the circumstances of this case, defendants were not entitled to the missing witness instruction.

## V.

Defendants also challenge the trial court's refusal to sever their cases for trial, the admission into evidence of the rebuttal testimony of Special Agent Masters, and the sufficiency of the evidence to sustain Busic's conviction for assault.[12] We find

these challenges to be without merit.[13] Thus, we affirm Busic's conviction in all respects. La Rocca's case is remanded to the district court for resentencing on either the counts alleging violation of 18 U.S.C. § 111 or the count alleging violation of 18 U.S.C. § 924(c)(1).

## SUPPLEMENTAL OPINION SUR REHEARING

On the government's petition for rehearing, we reconsider our opinion in *United States v. Busic*, Nos. 77–1375 and 77–1376 (3rd Cir., January 5, 1978) in light of the Supreme Court's subsequent decision in *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978). Although we reach the same conclusion, we do so on somewhat different grounds.

In *Simpson v. United States*, the Court held that a defendant may not receive consecutive sentences under section 924(c) and under the subsection of the Bank Robbery Statute, 18 U.S.C. § 2113(d), which provides for an enhanced penalty where a "dangerous weapon or device" is used.[1] The Court

*Burgess v. United States, supra*, 142 U.S.App.D.C. at 211, 440 F.2d at 239: "Having deliberately rejected an opportunity to produce a witness a defendant should not be permitted to complain that the witness is missing."

12. Defendant Busic concedes that he aided and abetted the assault on Harvey, who was not a federal officer. However, he challenges the sufficiency of the evidence to sustain his conviction for assaulting federal officers Alfree, Petraitis and John Macready. We find this contention to be without merit since the evidence overwhelmingly supports his conviction under both a conspiracy and an aiding and abetting theory. *See Nye & Nissen v. United States*, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949); *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

13. We have also considered and rejected the following challenges raised by defendants in their *pro se* briefs:
"1. Whether the remarks actions and conduct of the trial prosecutor was so flagrant and inflammatory, or so prejudicial and violative of due process to justify a new trial.
2. Whether or not appellants were deprived of a fair trial when the trial court denied them a severance; in light of the extreme

prejudice to one defendant or the other inevitable.
3. Whether the trial judge was prejudicial to the extent of depriving appellants of a fair and impartial trial.
4. Whether appellants were deprived of due process when they were deprived of a prompt post-arrest arraignment.
5. Whether the defendants were deprived of due process when the government failed to produce the key government alleged informant in the case—Richard Jervaux.
6. Whether the appellants were deprived of due process when they were denied Jenks Act discoverable materials.
7. Whether or not appellants were deprived of effective assistance of counsel, and counsel who suppressed evidence favorable to his clients.
8. Whether or not the government met its burden to sustain the convictions that appellants conspired to obtain, distribute and sell controlled substances; or that any conspiracy existed at all."
(Appellants' *Pro Se* Brief, at 7).

1. 18 U.S.C. § 2113(d) provides that:
 (d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any

noted that "[c]ases in which the Government is able to prove violations of two separate criminal statutes with precisely the same factual showing . . . raise the prospect of double jeopardy," but declined to reach the constitutional question. Instead, it based its decision on the legislative history of section 924(c), on the "policy of lenity" which in close cases counsels against the imposition of additional penalties, and on the principle of statutory construction which gives "precedence to the terms of the more specific statute where a general statute, and a specific statute speak to the same concern . . ." 435 U.S. at 15, 98 S.Ct. at 914.

In light of *Simpson*, we conclude that we need not have reached the constitutional question in *Busic*, and accordingly we vacate Part II–B of our opinion. We next address two additional questions raised by *Simpson* : first, whether as to La Rocca, the government on resentencing is permitted to *elect* to proceed under either section 924(c)(1) or section 111; second, whether as to *Busic*, the *Simpson* decision prohibits the consecutive sentences under section 111 and section 924(c)(2).

We believe that the *Simpson* decision did not adopt the approach of the Eighth Circuit in *United States v. Eagle*, 539 F.2d 1166 (8th Cir. 1976), *cert. denied*, 429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 563 (1977), which held that a crime for which the penalty is enhanced by use of a dangerous weapon cannot form the basis of a prosecution under section 924(c)(1). Rather, we

believe that under *Simpson*, the government is free to prosecute under either section, *provided* that the defendant is not sentenced under both.[2] We are supported in this view by Justice Brennan's closing words in *Simpson* : "in a prosecution growing out of a single transaction of bank robbery with firearms, a defendant may not be *sentenced* under both § 2113(d) and § 924(c)." 435 U.S. 16, 98 S.Ct. at 915 (emphasis supplied). Moreover, we believe that this conclusion is consistent with the Congressional purpose of section 924(c) which, as we noted in our first opinion, was to control and severely penalize the use of firearms.[3]

We also believe that the *Simpson* opinion does not proscribe the imposition of consecutive sentences under section 111 and section 924(c)(2). We adhere to the view which we expressed in our earlier opinion, that subsection (2) of section 924 creates an entirely separate offense from that punishable under section 111, since it requires that the government prove the weapon was carried "unlawfully".[4] The Court in *Simpson* faced only with the imposition of consecutive sentences under the bank robbery statute and section 924(c)(1), had no occasion to differentiate between the two subsections of section 924(c). In view of our reading of the different Congressional purposes underlying the two subsections of section 924(c), we believe that *Simpson* applies only to subsection (1) of section 924(c).

person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

2. Thus, since La Rocca's section 111 sentence was to run concurrently with his sentences on the other counts, should the government elect to proceed under section 924 rather than under section 111, he may receive the identical sentence which he earlier received. This would be entirely consistent with our reading of the *Simpson* opinion.

3. On reargument, the government again asks that we sustain the section 924(c)(1) sentence using as a predicate La Rocca's conviction for narcotics conspiracy. Although we note that

the jury was charged that it could convict La Rocca for having used a firearm during commission of either the assault or the narcotics conspiracy, we reiterate that it is impossible to ascertain on which of these felonies the jury relied. *See* fn. 5.

4. We are buttressed in this view by the fact that the weapon which Busic was convicted for having "carried unlawfully", was a different weapon from that used by La Rocca in committing the underlying assault, charged to Busic pursuant to 18 U.S.C. § 2. Thus, on the facts of this case, it is clear that Busic's conviction under section 924(c)(2) was for a crime completely separate from his conviction for assault with a dangerous weapon.

Accordingly, as to Busic, we again affirm the imposition of consecutive sentences under section 924(c)(2) and section 111. La Rocca's case is remanded for resentencing, at which time the government may elect to proceed under either section 924(c)(1) or section 111, but not both.