**UNITED STATES of America**

v.

**Jacob P. WASHINGTON, Robert Hickman and Jerome Washington.**

Crim. A. Nos. 92–63–01, 92–63–02 and 92–63–05.

United States District Court, D. Vermont.

March 5, 1993.

John P. Tavana and Greg Waples, Asst. U.S. Attys., Burlington, VT, for U.S.

Mark Kaplan, Jarvis & Kaplan, Burlington, VT, for defendant Jacob Washington.

Karen Shingler, Burlington, VT, for defendant Hickman.

Bonnie Barnes, Session, Keiner, Dumont, Barnes & Everitt, Middlebury, VT, for defendant Jerome Washington.

## OPINION AND ORDER

PARKER, Chief Judge.

A multi-defendant, multi-count indictment has been handed down in this case, charging various drug and firearms offenses. The Indictment accuses all three defendants, Jacob Washington, Robert Hickman, and Jerome Washington, with conspiring to distribute cocaine in Vermont during 1991 and 1992. It also charges the two Washington brothers with numerous substantive counts of possessing and distributing cocaine as well as weapons offenses. Among the weapons offenses, Jerome Washington is charged with using a semi-automatic pistol to retaliate against potential witnesses. A young woman, Melissa Wells, was killed during that incident. In addition, Robert Hickman and Jacob Washington are charged with using Western Union to transfer proceeds from their drug operations.

Jacob Washington was arrested on May 22, 1992. His brother, Jerome Washington was arrested on May 24, 1992. Robert Hickman was arrested in New York City in June, 1992. After their arrests, Jacob Washington and Robert Hickman made allegedly incriminating statements to law enforcement authorities. Robert Hickman implicated Jacob Washington. Jacob Washington implicated both his brother Jerome Washington and Robert Hickman.

Before the Court are numerous pretrial motions filed by each defendant. This Opinion and Order addresses the motions to sever and a number of discovery motions.[1]

## I. MOTIONS TO SEVER

Each defendant has moved for severance of his trial from those of his remaining co-defendants under Rule 14 of the Federal Rules of Criminal Procedure. Defendants Jacob Washington and Robert Hickman have each moved to sever their trials from that of defendant Jerome Washington to avoid prejudicial spillover from any linkage to the related Wells murder allegedly committed by Jerome Washington. Defendants Robert Hickman and Jerome Washington have moved to sever their trials from those of their co-defendants to avoid potential Sixth Amendment violations. Defendant Robert Hickman further argues that the defenses of his co-defendants are antagonistic to his defense. Finally, defendant Jerome Washington moves for severance of several *offenses* claiming that they have been misjoined under Federal Rule of Criminal Procedure 8(b), or that the joinder is prejudicial under Rule 14. The propriety of the joinder of *defendants* under Rule 8(b) has not been challenged.[2]

### A. *Prejudicial Spillover*

■ Count 49 of the Indictment charges Jerome Washington with the use of a firearm during and in relation to a crime of violence, retaliating against a witness or informant, in violation of section 1513(a)(2) of title 18 of the United States Code. During this alleged attempt at retaliation, a young woman was shot and killed. Claiming that the spillover effect of the retaliation charge and the related murder are so highly prejudicial to their cases that they cannot receive a fair trial, co-defendants Robert Hickman and Jacob Washington have individually moved for severance of their trial under Rule 14. The Government responds that the defendants have failed to meet their burden of proof on this issue.

---

**1.** In addition, the Court has noted motions by Defendants Jerome and Jacob Washington to adopt all motions filed by their co-defendants. (No. 92–CR–63–05, Paper 21; No. 92–CR–63–01, Paper 45). The filings in this case have been voluminous. Without a more specific delineation of which motions the defendants wish to adopt, Defendants' motions to adopt are hereby DENIED.

**2.** Among the offenses Jerome Washington has moved to sever for misjoinder are numerous counts relating to a second conspiracy charged

in the Indictment. Jerome Washington was not named in that conspiracy charge, nor in the related substantive offenses. This portion of Jerome Washington's motion is now moot however, as all of the individuals charged in the second conspiracy have pleaded guilty to other related substantive offenses. Accordingly, all charges related to that second alleged conspiracy which do not name the three remaining defendants, will be dropped from the Indictment. The counts which remain are Counts 1, 4, 6–8, 10, 14, 23–26, 29, 31–32, 37–44, 48–49.

■ Rule 14 provides, in relevant part, that defendants who have been joined for trial may be severed and tried separately if it appears that a defendant is prejudiced by the joinder. Fed.R.Crim.P. 14. A trial judge has broad discretion in determining whether a joint trial is unfairly or unduly prejudicial. *United States v. Casamento*, 887 F.2d 1141, 1149 (2nd Cir.1989), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990); *United States v. Wiley*, 846 F.2d 150, 157 (2nd Cir.1988). The defendants, as the moving parties, bear the burden of proof in a Rule 14 motion.

■ Any joinder carries with it a slight prejudice. Often, the judicial policy of avoiding duplicative trials, inconsistent results, and any unfair advantage given to later tried defendants outweighs the inherent prejudices of joint trials. *United States v. Cardascia*, 951 F.2d 474, 483 (2nd Cir.1991). In cases such as this, where defendants have been jointly indicted on charges involving a common plan or scheme, the need for efficient judicial administration of criminal justice supports a joinder for trial. Judicial economy weighs heavily in the balance. *Id.* at 482. To warrant severance, defendants must show facts that demonstrate so severe a prejudice that they are effectively denied a fair trial. *Id.; United States v. Taft*, 769 F.Supp. 1295, 1312 (D.Vt.1991).

■ In this case, defendants have failed to carry that burden. They argue that the violent crime linked to their case and the publicity surrounding that crime has an unfair spillover effect. That is, they claim that no jury could view the conspiracy, drug and weapons offenses separately from the retaliation charge. Typically, spillover claims are used where evidence that is admissible only against one defendant is prejudicial to all defendants. *United States v. DiNome*, 954 F.2d 839, 843 (2nd Cir.), *cert. denied sub nom., Testa v. United States*, — U.S. —, 113 S.Ct. 94, 121 L.Ed.2d 56 (1992). The Court recognizes that severance may constitute appropriate relief when evidence of a violent crime is *unrelated* to the charged offenses. *Cardascia*, 951 F.2d at 483. But such an argument is unavailing for the defendants here. The retaliation offense charged in the Indictment is directly linked to the charged drug and weapons offenses. The Government represents that evidence relating to the retaliation offense may very well be admissible against all of the defendants. In view of such a link, any prejudicial impact from joinder cannot be deemed unfair. Absent unfair prejudice, concerns for judicial economy in this case outweigh the inherent prejudices in joinder.

■ Furthermore, even if the evidence for the retaliation charge were unrelated to the other charges, mere association with a violent crime and publicity does not warrant severance. *Casamento*, 887 F.2d at 1154. As the Government points out, appropriate cautionary jury instructions can obviate the need for severance where violent crime or publicity is an issue. *See id.; United States v. DeVillio*, 983 F.2d 1185, 1193 (2nd Cir. 1993). In the words of the Second Circuit: "[W]e cannot assume that a multi-defendant drug trial is beyond the ken of the average juror." *United States v. Villegas*, 899 F.2d 1324, 1347 (2nd Cir.), *cert. denied*, 498 U.S. 991, 111 S.Ct. 535, 112 L.Ed.2d 545 (1990). The charges in the case at bar are not confusing, and the Court has no reason to believe that a jury could not compartmentalize and consider separately the evidence relating solely to the retaliation charge. *See United States v. Barton*, 647 F.2d 224, 241 (2nd Cir.), *cert. denied*, 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981).

## B. *Bruton Problems*

■ Defendants Robert Hickman and Jerome Washington have each moved to sever their trials to safeguard their Sixth Amendment right to confront witnesses. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Their concerns arise from the alleged post-arrest statements made by Jacob Washington and Robert Hickman. To allay the defendants' *Bruton* concerns the Government represents that it does not intend to introduce any statements made by Jacob Washington or Robert Hickman which incriminate Jerome Washington. Nor will it introduce statements made by Jacob Washington which incriminate Robert Hickman. The Government further represents

that should they use any admissions from these defendants which contain references to Jerome Washington or Robert Hickman, the Government will redact those references. Based on these representations, severance is not required to protect the defendants Sixth Amendment rights.[3] *United States v. Walka*, 791 F.Supp. 96, 97 (D.Vt.1992).

### C. *Antagonistic Defenses*

 Defendant Robert Hickman argues that he is entitled to severance because his defense is antagonistic to the defenses of his co-defendants. His argument fails. Merely stating that defenses are antagonistic is not sufficient; Hickman must show that his defenses and those of his co-defendants are so irreconcilable as to be mutually exclusive. *Cardascia*, 951 F.2d at 484. In other words, Hickman must demonstrate that to accept one defense means that out of necessity the jury must convict the other defendants. Conflict to such a degree could implicitly render the trial unfair. *Id.* Alternatively, a fair trial may also be denied if a jury is unjustifiably led to infer from the existence of a conflict alone that all of the defendants are guilty. *Id.* As the Supreme Court recently made clear, however, "mutually antagonistic" or "irreconcilable" defenses are not prejudicial *per se.* *Zafiro v. United States,* —— U.S. ——, ——, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993). "Moreover, Rule 14 does not require severance even if prejudice is shown; rather it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* For example, cautionary jury instructions may be sufficient to counter any prejudice. *Id.* at ——, 113 S.Ct. at 938.

 In any event, Hickman has failed to make a convincing showing of the requisite level of antagonism to even begin an analysis of the proper relief. He merely states that some of his co-defendants, many of whom have now pleaded guilty, will defend themselves by attempting to inculpate him. For those who have pleaded guilty, severance is a moot issue. But even if one of the remaining co-defendants chooses to defend himself by placing blame on Hickman, this fact alone would not necessitate severance. *Id.* Again, in a multi-defendant case, joinder for trial is preferred. Co-conspirators often take adversarial positions and engage in fingerpointing tactics. The fact that these defendants may be hostile to one another or may attempt to blame each other does not warrant severance. *Casamento*, 887 F.2d at 1153; *Villegas*, 899 F.2d at 1347. More conclusive to the Court's decision on this issue however, is Robert Hickman's failure to articulate the specific defenses that are at odds with each other and how they are mutually exclusive of each other. He merely points out the potential for distinct defense strategies among the defendants. *See Zafiro,* —— U.S. at ——, 113 S.Ct. at 938. Severance should only be granted where "there is a serious risk that a joint trial would compromise *a specific trial right* of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at ——, 113 S.Ct. at 938 (emphasis added).

### D. *Prejudice From Linkage With Ex-felon Weapons Charge*

 Defendant Jerome Washington has moved to sever the Counts 37–41 which charge his brother and co-defendant, Jacob Washington, with knowing possession of a firearm by a convicted felon. Defendant Jacob Washington is alleged to have been convicted in the state of New York on a felony charge of possession of a controlled substance. Jerome Washington asserts a prejudicial spillover effect will result from a trial of these firearm charges with those he faces. He reasons that evidence of his brother's earlier conviction will impermissibly taint the jury's consideration of the evidence presented against him on separate drug and weapons charges. To support his motion to sever these counts he argues that evidence of Jacob Washington's prior conviction would not

---

**3.** Robert Hickman alternatively requested that, if severance is not granted, the Court should exclude in their entirety any incriminating statements made by his co-defendants. Given the Government's representations on redaction, I find it unnecessary to make exclusionary rulings on this matter at this time. The issue may be revisited at trial should the redactions prove insufficient to protect against Sixth Amendment violations.

be admissible at trial barring these charges. Stating that the Second Circuit has not ruled on this issue, he cites a Third Circuit case, *United States v. Busic,* 587 F.2d 577 (3rd Cir.1978), *rev'd on other grounds,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980), in support of his position.

Indeed, the *Busic* court cautions district courts to determine whether evidence of prior convictions would be admissible on other counts if tried independently. If not, severance should be granted. *Id.* at 585. Other courts have rejected a *per se* rule, instead, considering the potential for adverse effects on a case-by-case basis. *See e.g., United States v. Lewis,* 787 F.2d 1318, 1322 (9th Cir.1986), *cert. denied,* 489 U.S. 1032, 109 S.Ct. 1169, 103 L.Ed.2d 227 (1989).[4] The Second Circuit appears to have adopted the case-by-case approach. *See Villegas,* 899 F.2d at 1347 (Court looks to a number of factors to determine whether a denial of severance was abuse of discretion, including admissibility of evidence and adequacy of jury instructions).

■ This Court begins its analysis with a well-settled principle in mind. In multi-defendant trials, the fact that some evidence may be admissible against only one defendant does not mandate severance. *United States v. Chang An–Lo,* 851 F.2d 547, 556 (2nd Cir.), *cert. denied,* 488 U.S. 966, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988). This general rule is qualified however, where a court could not reasonably believe that a jury could compartmentalize and separate evidence adduced against one defendant from all other evidence against his co-defendants. Jerome Washington argues that such is the case at bar given his familial relationship to a co-defendant, who is an alleged ex-felon, in a drug and weapons case where his brother's prior felony conviction involved a drug offense.

■ The protections afforded a defendant by Rule 404(b) of the Federal Rules of Evidence are meant to combat the tendencies juries may have to find guilt by reputation. *See United States v. Daniels,* 770 F.2d 1111,

1116–18 (D.C.Cir.1985) (discussing Rule 404(b) and severance issues). In a single defendant, multiple offense trial, the admissibility of evidence of prior crimes for joined ex-felon charges may prove to be an end-run around evidentiary rules on prior misconduct. Allowing joinder rules to lay waste to the fundamental right of a defendant to be tried for the crime alleged and not his character or prior bad acts creates precisely the type of unfair prejudice that severance is designed to remedy.

The risk of such unfair prejudice clearly inures to the defendant who is charged as an ex-felon. What is argued here is that such risk bears additional fruit: potential unfair prejudice against a co-defendant brother. However, where a case involves several defendants, the risk of prejudice from joinder of related offenses for the separate defendants is less severe. As courts have recognized, "[i]t is much more difficult for jurors to compartmentalize damaging information about one defendant derived from joined counts than it is to compartmentalize evidence against separate defendants joined for trial." *Lewis,* 787 F.2d at 1322. Still, that is not to say that Jerome Washington's argument on prejudicial spillover has no merit. Protections against the risk of a jury finding guilt by association must be considered. Co-defendants of one who is charged as an ex-felon may suffer prejudicial spillover. As so eloquently articulated by the *Daniels* court,

> We must emphasize, however, that joinder decisions must be informed by a respect for the special problems created by the introduction of other crimes evidence, and that it consequently will behoove prosecutors and trial judges to proceed with caution....

*Daniels,* 770 F.2d at 1118.

■ Nonetheless, Jerome Washington's argument for severance is plagued by two misperceptions. First, he assumes that no procedural devices exist which could counteract the risk of prejudice he faces. Yet a number of courts have found that timely and thorough precautionary instructions neutralize prejudicial spillover. *See e.g., United*

---

**4.** Some courts, having found the jury's perception tainted by evidence of prior crimes or bad

acts, have reversed convictions. *See e.g., Lewis,* 787 F.2d at 1323.

States v. Perez–Garcia, 904 F.2d 1534, 1545 (11th Cir.1990). On point, the Ninth Circuit has held that careful instructions to ignore family relationship and to segregate evidence suffice where brothers are tried together and evidence admissible against one is not admissible against the other. *United States v. Hernandez*, 952 F.2d 1110, 1116 (9th Cir. 1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 334, 121 L.Ed.2d 252 (1992). While some courts disagree about the efficacy of jury instructions on matters such as these, a district court's "scrupulous regard for the defendant's right to a fair trial" throughout the proceedings may cure any adverse effects from potential spillover. *Daniels*, 770 F.2d at 1118. Thus, the existence of prejudicial spillover does not mandate severance.

Also recommended in cases where ex-felon charges are joined is a redaction from the indictment of any mention of the nature of the prior felony. *United States v. Burgess*, 791 F.2d 676, 679 (9th Cir.1986). Furthermore, a stipulation that a prior felony exists obviates the need to introduce evidence describing the offense. *Id.* At present, the Court believes such devices will prove sufficient and effective in protecting Jerome Washington's right to a fair trial in the case at bar. This Court however, has a continuing obligation to evaluate possible prejudicial impact throughout the judicial proceedings, and thus, this issue may be reconsidered at trial. *United States v. DiNome*, 954 F.2d 839, 845 (2nd Cir.1992).

### E. *Misjoinder of Drug and Weapons Charges*

Defendant Jerome Washington has moved to sever the firearms offenses charged against him in Counts 48 and 49. He asserts that these charges have been misjoined under Rule 8(b). First, he claims that from the face of the Indictment, these two weapons offenses are unrelated to the drug conspiracy and other substantive offenses charged. Furthermore, the defendant claims he is prejudiced by the joinder because the evidence against him pertaining to the drug conspiracy charge is minimal and the evidence relating to the weapons charges would not be independently admissible in a trial on the drug trafficking charges only. Finally, Jerome Washington faces state charges stemming from the events which gave rise to Counts 48 and 49. He refuses to waive his Fifth Amendment privilege against self-incrimination while the state charges are pending, yet he claims he would testify as to his lack of involvement in the drug trafficking conspiracy if severance were granted.

### 1. *Rule 8(b)*

█ In multi-defendant cases, joinder of offenses is governed by Rule 8(b). *United States v. Turoff*, 853 F.2d 1037, 1043 (2nd Cir.1988). The rule provides:

(b) Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Fed.R.Crim.P. 8(b). Thus, while a defendant need not have participated in every act charged, each act must be part of a series of acts and each defendant must have participated in that series. *See Turoff*, 853 F.2d at 1043. The Second Circuit further construes this rule of joinder to mean that where the criminal acts of two or more persons are unified by some substantial identity of facts or participants, or arise out of a common plan or scheme, they are properly joined. *United States v. Cervone*, 907 F.2d 332, 340 (2nd Cir.1990).

█ The Government argues that Count 49, the witness intimidation-retaliation offense, is part of a series of acts related to the drug trafficking offenses. Citing numerous analogous cases which hold that joinder of similar types of offenses was proper, the Government contends that joinder of Count 49, the retaliation charge, is warranted under Rule 8(b). Count 48 is alleged to be factually intertwined with Count 49, and thus properly joined also. The firearm which is the subject of Count 48, was found on Jerome Washington's person when he was arrested for the events which gave rise to Count 49. The Government asserts that possession of two

weapons on the same day, within a short time span constitutes a "series of acts" that are properly joined.

The Court agrees with the Government's analysis. First, the facts underlying each of the weapons offenses are related. Moreover, the possession of two firearms on the same day strongly suggests a "series of acts" that are related. Second, although the Indictment did not plead facts that relate the weapons offenses to the drug charges, that fact alone will not support severance. The Government represents that it will prove a linkage between the weapons offenses, in particular, the retaliation charge, and the drug offenses. Furthermore, the Government states that much of the same evidence and the same factual background will be used to prove these separate but related offenses. In line with other cases in this Circuit, this Court holds that where one offense allegedly stems from another, such as the retaliation offense stemming from the drug offenses in this case, they are properly joined. *See Turoff*, 853 F.2d at 1044; *United States v. Castro*, 813 F.2d 571, 578 (2nd Cir.1987).

#### 2. *Prejudice from joinder*

■ Given that joinder is proper, the defendant makes an unpersuasive argument that he is unfairly prejudiced by joinder of the weapons offenses and drug trafficking offenses because evidence relating to the firearms charges would not be admissible against the drug charges. Even assuming that to be true, which is not at all clear at this point, as noted above in sections I(A) and (D), the Court has no reason to believe that a jury in this case could not compartmentalize the evidence it receives. Severance is not required.

■ Defendant's second argument on prejudice is more convincing; however, he has failed to carry his burden of proof. Where a defendant asserts that he would testify as to one set of charges, but not the other, as Jerome Washington has said in this case, he carries a substantial burden. He must show that he has important testimony to give concerning one count, and a strong need to refrain from testifying on the other. *United States v. Werner*, 620 F.2d 922, 930 (2nd Cir.1980). Jerome Washington clearly makes a strong showing that he has a need to refrain from testifying on the charges contained in Counts 48 and 49. But merely stating that he would testify as to the other charges he faces is not a showing that he has *important* testimony to give. To prevail in his motion for severance on this ground, the defendant may be required to reveal some of his trial strategy. *United States v. Busic*, 587 F.2d 577, 585 n. 9 (3rd Cir.1978). At present, severance is unwarranted.

### II. DISCOVERY MOTIONS

#### A. *Requests To Produce Witnesses Statements*

■ Jacob Washington has moved to compel the Government to produce Jencks Act material prior to trial. Citing a Second Circuit case, *United States v. Percevault*, 490 F.2d 126, 131 (2nd Cir.1974), he requests a liberal construction of the Jencks Act requirements. *See* 18 U.S.C. § 3500(a)–(b). The Court declines to expand the meaning of the statute beyond its rather definitive limits. Furthermore, *Percevault* states that a district court may not, over the Government's objection, compel early disclosure of Jencks Act material. *Percevault*, 490 F.2d at 129.

Under section 3500(a), no statement made by a Government witness shall be the subject of discovery until after the witness has testified on direct examination at trial. *Id.; see also*, Fed.R.Crim.P. 26.2(a) (placing substance of Jencks Act in rules of procedure and making it applicable to defense witness statements also). Recognizing the need for expediency in the trial process, the Government has agreed to make Jencks Act material available to the defendants in this case one day before the witness to which the material pertains is scheduled to testify. Under *Percevault*, this Court does not have authority to compel earlier disclosure.

#### B. *Rule 404(b) Disclosure*

■ Two of the defendants, Robert Hickman and Jacob Washington, have moved this Court to direct the Government to provide notice as contemplated by Rule 404(b) of the Federal Rules of Evidence. Robert Hickman requests an *in camera* disclosure to the

defendant of Rule 404(b) evidence with specific requests for the names, addresses, reports, and statements of witnesses the Government intends to call to offer such evidence. Jacob Washington requests that the Government specify the accusations that will be made and disclose the identity of witnesses it will rely on to offer the Rule 404(b) evidence. In response, the Government simply states that it will comply with the dictates of the rule.

To the extent that the defendants are constructing an alternative means of obtaining witness statements prior to trial, the Court refers them to section II(A) above. Also, no specific time for disclosure was requested by the defendants. The rule provides only that the Government provide "reasonable notice in advance of trial." Fed.R.Evid. 404(b). Upon the Government's representation that it intends to comply with the dictates of Rule 404(b), the Court notes that this motion is not ripe and is therefore denied.

### C. *Disclosure of Grants or Promises of Immunity or Leniency*

All three defendants move to compel the Government to disclose any promises of leniency or immunity it has made to potential witnesses. In response to this motion, the Government produced a list of such promises and the witnesses to which they pertain. Accordingly, defendants' motions on this issue have been rendered moot.

### D. *Updated Witness Addresses*

Defendants Robert Hickman and Jerome Washington have requested that the Court compel the Government to provide them with updated addresses for all witnesses. The Government argues that such a broad order would be unduly cumbersome. However, it agrees to provide any new or different address information for a specific witness if so requested by the defendants, provided the defendants show they have attempted to locate the witness at the address already furnished by the Government. The Government states that it is presently unaware that any of the previously provided addresses are outdated or erroneous. Such a resolution appears fair and the Court declines to impose a greater burden on the Government at this time.

Jerome Washington particularly requests disclosure of Allen Robertson's address, noting that Mr. Robertson has agreed to further deposition and that having his current address would facilitate discovery. The Government opposes this motion, arguing that the defendant has not provided any new reasons why the Court should alter its prior order denying the defendant access to Mr. Robertson's address. The Court agrees.

### E. *Inspection Pursuant to Rule 16(a)(1)(C)*

■ Jerome Washington moves the Court to set a time and place for the production and inspection of documents and physical evidence pursuant to Federal Rule of Criminal Procedure 16(a)(1)(C). To the extent that the Government has not yet granted the defendant access to the materials to which he has a right to inspect under Rule 16, *i.e.*, items material to preparation of his defense, items intended for use by the government as evidence in chief at trial, or items that were obtained from defendant, it is ordered to do so immediately. The Court leaves it to the parties to determine an appropriate time and place for the inspection.

■ Both Jerome and Jacob Washington request that the Court compel the Government to particularize the evidence it intends to use at trial. The defendants argue that in the face of the voluminous physical and documentary evidence in this case such disclosure is necessary to properly prepare for trial. The Government opposes the motions, noting a concern that such requests could represent an attempt to restrict the scope of the Government's proof at trial. The Court has no intention of compelling the Government to reveal its trial strategy by way of identifying specific proof at this point in time. But the Court is also sensitive to the defendant's need for meaningful discovery. In a recent sister district court ruling, where defendants were overwhelmed by discovery materials which filled several large rooms, the Government was directed "to the best of its good faith ability, to tell the defense of any dis-

crete parcels of material that it [did] *not* plan to use at trial." *United States v. McDade,* No. 92–249, 61 U.S.L.W. 2413, 1992 WL 382351 (D.E.Pa. Dec. 11, 1992) (emphasis added). Should the defendants demonstrate that a similar volume of material exists in the case at bar, this Court may be inclined to fashion a similar order. Without such a specific showing however, I refuse to compel any such disclosure by the Government.

### F. Disclosure of Confidential Informants

█ Jacob and Jerome Washington have moved the Court to compel the Government to disclose the identity of confidential informants used in investigating this case. Confidential informants were used to gather information supporting the search warrants of four residences. Furthermore, the use of confidential informants was noted in the affidavit which accompanied the Government's application for wiretap authorization. Jerome Washington asserts that he expects these confidential informants would provide exculpatory information and thus their identity is material to his defense. He argues that the informants are key witnesses in the Government's case and are almost exclusively the basis for the charges lodged against him. Furthermore, he asserts that identity of the confidential informants will lead to probative evidence for purposes of his motion for a *Franks* hearing. Jacob Washington argues that disclosure of the confidential informant's identity is necessary so that he may interview them to determine what information was provided to the Government. Thus, the defendants set forth two rationales for disclosure: (1) the information requested directly affects the issue of guilt or innocence; and (2) the information would assist them in pretrial matters.

The Government refutes these arguments by stating that the defendants have failed to make a showing of need sufficient to overcome the general privilege that attaches to informant identity. In particular, the Government notes that the defendants already know the identity of one key informant, Allen Robertson, whose information supported the search warrants. The Government states that the other informants did not provide "core" information and thus, disclosure of their identity is not required.

█ The question of whether to reveal the identity of confidential informants is entrusted to the sound discretion of a trial judge. *United States v. Manley,* 632 F.2d 978, 985 (2nd Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). It is by now well established that with regard to the identity and statements of confidential informants the Government enjoys a qualified privilege. *See Roviaro v. United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957) and progeny. This privilege has proved particularly important in drug cases. *United States v. Webster,* 606 F.2d 581, 584 (5th Cir.1979). The defendants bear the burden of establishing entitlement to such information. *Manley,* 632 F.2d at 985. To show entitlement, defendants must establish "that the information sought is both relevant and essential to the presentation of [their] case on the merits and that the need for disclosure outweighs the need for secrecy." *Cullen v. Margiotta,* 811 F.2d 698, 715–16 (2nd Cir.1987) (*citing United States v. Russotti,* 746 F.2d 945, 949–50 (2nd Cir.1984) and *United States v. Manley,* 632 F.2d at 985).

█ As the Second Circuit sees it, the general rule on this governmental privilege is that a defendant makes a much more persuasive case for disclosure when his purpose is to vindicate a defense on the merits rather than to support a pretrial challenge to probable cause for an arrest or search. *Manley,* 632 F.2d at 985. Where the defendants seek access to any informant's identity for the latter, more peripheral purpose, they must show not only that their need for disclosure outweighs the need for secrecy, but also, that the information supplied by the informants constituted a "core" or "essence" of the probable cause upon which the Government has relied, and that the information was uncorroborated. *Id.* The Government states that Allen Robertson, a Government informant whose identity has long been known to the defendants, provided the "core" information for their affidavit supporting the search warrant. Defendant Jerome Washington points out that there are significant discrepancies in the information that Robertson provided to

him in deposition as compared to the information attributed to Robertson in the affidavit supporting the search warrant. While this may be true, I do not see how such discrepancies reflect on the "core" value of the information utilized by the Government in their affidavit. Rather, the discrepancies appear to go directly to the question of a need for a *Franks* hearing, an issue which has been raised by Jerome Washington and is now pending in this Court. Accordingly, the Court finds that the defendants have not met their burden of establishing that the information provided by the other confidential informants was the essence of the probable cause relied upon by the Government.

■ With regard to their stated need for disclosure to vindicate their defenses of innocence, the Defendants rely upon the Supreme Court decision in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). This Court notes however, that disclosure in that case, and others cited by the Court in *Roviaro*, became an issue *during* trial when it could be established that a particular informant's testimony was highly relevant and helpful to a stated defense. *Roviaro*, 353 U.S. at 62 n. 12, 63–64, 77 S.Ct. at 628 n. 12, 629–30; *McCray v. Illinois*, 386 U.S. 300, 310, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62 (1967). Quite opposite circumstances are presented to this Court at this juncture. The defendants have made a general pretrial request for the disclosure of all confidential informants. Accordingly, this issue is not yet ripe for decision and the motion is therefore denied.

### G. Preservation of Evidence and Production of Brady Material

Jacob Washington has moved this Court to require the Government to preserve and retain any evidence in this case. The Government claims it has no intention of destroying or altering material evidence. Jacob Washington also moved to compel the Government to retain and produce rough notes from interviews with potential witnesses. The Government agrees to provide all materials required under the Jencks Act and the Federal Rules of Criminal Procedure. Finally, Jacob Washington moved to require the Government to produce all potentially exculpatory evidence. To the extent that any material in the Government's possession contains exculpatory evidence, the Government agrees to disclose such evidence in a timely manner pursuant to its obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Accordingly, these motions are now moot.

### H. Motion to Disclose Grand Jury Minutes

■ Jacob Washington has alleged that the Government did not exhaust normal investigative techniques nor sufficiently utilize the grand jury process before resorting to use of a wiretap. His motion to suppress evidence obtained from the wiretap is pending in this Court. He presently moves the Court for access to the Grand Jury minutes to determine whether indeed the Government exhausted its other avenues. He asserts that his request presents a sufficient showing of particularized need as it pertains only to the Grand Jury minutes which relate to whether the wiretaps were authorized. The Government disputes this argument, and contends that the defendant has failed to meet his burden of proof.

The general rule of secrecy of grand jury proceedings has been held to be essential to the purpose of the grand jury process. *United States v. Proctor and Gamble Co.*, 356 U.S. 677, 681, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). The exceptions to this rule are few. *See* Fed.R.Crim.P. 6(e)(3). Defendant is presumed to request disclosure pursuant to the general exception noted in Rule 6(e)(3)(C)(i).

■ A defendant seeking disclosure of grand jury minutes must show a particularized need for the material to avoid possible injustice and that the particularized need outweighs the historic, societal need for secrecy. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222–23, 99 S.Ct. 1667, 1674–75, 60 L.Ed.2d 156 (1979); *United States v. Estes*, 609 F.Supp. 564, 569 (D.Vt. 1985). A district court is infused with substantial discretion in determining whether a defendant's need outweighs the need for secrecy. *Douglas Oil*, 441 U.S. at 223, 99 S.Ct.

at 1675. The motion presented to this Court in the case at bar suggests little more than an attempt to pursue a broad fishing expedition to determine what took place before the Grand Jury. At present, I do not find his need special, nor compelling.

## CONCLUSION

Accordingly, for the foregoing reasons, the Defendants motions are disposed of as follows:

(1) Defendants' motions to sever are hereby DENIED (No. 92–63–01, Paper 47; No. 92–63–02, Papers 30–31; No. 92–63–05, Paper 15);

(2) Defendant Jacob Washington's Motion For Production of Statements of Witnesses is hereby DENIED (No. 92–63–01, Paper 39);

(3) Defendants' motions to compel notice under Rule 404(b) is not ripe (No. 92–63–01, Paper 40; No. 92–63–02, Paper 29);

(4) Defendants motions for disclosure of grants of immunity is now moot (No. 92–63–01, Paper 50; No. 92–63–02, Paper 33; No. 92–63–05, Paper 19);

(5) Defendants's motions to compel Government to update addresses is mooted out in part and DENIED IN PART (No. 92–63–02, Paper 33; No. 92–63–05, Paper 20);

(6) Defendant Jerome Washington's Motion for Production and Disclosure is hereby GRANTED IN PART (No. 92–63–05, Paper 18);

(7) Defendants' motions to particularize evidence is hereby DENIED (No. 92–63–01, Paper 51; No. 92–63–05, Paper 18);

(8) Defendants' motions to disclose the identity of confidential informants is hereby DENIED (No. 92–63–01, Paper 49; No. 92–63–05, Paper 14);

(9) Defendant Jacob Washington's motions to preserve evidence have been mooted out (No. 92–63–01, Papers 41 and 42);

(10) Defendant Jacob Washington's Motion For Disclosure of Grand Jury Minutes is hereby DENIED (No. 92–63–01, Paper 48); and

(11) Defendants' motions to adopt all motions filed by co-defendants is hereby DE-NIED (No. 92–63–01, Paper 45; No. 92–63–05, Paper 21).