UNITED STATES of America

v.

**John A. DRISCOLL, Appellant.**

No. 87–5917.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
July 11, 1988.

Decided July 20, 1988.

Richard F. Maffett, Jr., Socha & Maffett, Harrisburg, Pa., for appellant.

James J. West, U.S. Atty., Gordon A.D. Zubrod, Asst. U.S. Atty., Harrisburg, Pa., for appellee.

Before SLOVITER, SCIRICA and WEIS, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

John A. Driscoll, who was convicted under 18 U.S.C. § 2252(a)(2) (Supp. IV 1986) for receiving child pornography through the mail, contends on appeal that the district court erred in denying his motion to dismiss the indictment on the ground that governmental misconduct abridged his due process rights. The question whether the government's conduct was so outrageous as to violate Driscoll's due process rights is a legal one, and our review is plenary.

### I.

Driscoll, who was identified as a person who had previously ordered child erotica after his name was found on mailing lists obtained by the U.S. Postal Service in the course of its investigative activities, was selected as a target of the Postal Service's undercover operation known as "Project Looking Glass." This operation was designed to identify and prosecute persons transmitting child pornography through the mail. Undercover U.S. Postal Agents, operating under the name Far East Trading Company, Ltd. of Hong Kong, with a branch office in St. Croix, sent Driscoll a solicitation letter. Driscoll responded promptly with a request for more information. He was then mailed a brochure and he ordered five magazines so explicitly described in the brochure as to leave no doubt that they contained child pornography. In response to Driscoll's order, the Postal Service agents sent him one of the five magazines, entitled *Skoleborn*. The postal inspectors then obtained and executed a warrant for the search of Driscoll's home, pursuant to which they found materials containing child pornography, including the issue of *Skoleborn* that had been ordered pursuant to their solicitation.

Driscoll was subsequently indicted on a single count of receiving *Skoleborn* in violation of 18 U.S.C. § 2252(a)(2), which prohibits, *inter alia*, the knowing receipt through the mails of a visual depiction involving the use of a minor engaging in sexually explicit conduct. Driscoll pled not guilty and moved to dismiss the indictment on the ground that the government's conduct was so improper and overreaching as to violate his due process rights.[1] The district court denied Driscoll's motion, and Driscoll entered a conditional guilty plea pursuant to Fed.R.Crim.P. 11(a)(2). He was thereafter sentenced to pay a fine of $1,000 and placed on probation for two years, with the special condition that he participate in mental health treatment.

### II.

Driscoll contends on appeal that "[a]bsent the postal authorities committing the federal crime of sending said material to him through the United States mail, [he] could not possibly be guilty of the crime alleged against him," Appellant's Brief at 9, and that, in effect, the government's conduct was so outrageous as to violate his due process rights. Significantly, Driscoll does not claim lack of predisposition and therefore does not advance the defense of entrapment.[2]

---

1. Driscoll also moved in the district court to suppress evidence seized in his home on the grounds that the search warrant was based on illegally-obtained evidence and that it was overly broad. The district court denied this motion, and Driscoll does not challenge the district court's denial of his motion to suppress on appeal.

2. We note that the Supreme Court's recent decision in *Mathews v. United States,* 108 S.Ct. 883 (1988), establishes that a defendant may plead entrapment notwithstanding his or her refusal to admit all of the elements of the underlying offense, thereby overturning our cases to the contrary. *See, e.g., United States v. Jannotti,* 673 F.2d 578, 601 (3d Cir.) (in banc), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982); *United States v. Hill,* 655 F.2d 512, 514 (3d Cir.1981). In this case, however, our pre-*Mathews* rule was not the basis for Driscoll's failure to raise the entrapment defense, and therefore *Mathews* does not affect our disposition of this appeal.

The Supreme Court has never outlined the contours of a due process violation based on the misconduct of law enforcement officers. There has been some allusion to such a defense in Supreme Court opinions. *See, e.g., United States v. Russell,* 411 U.S. 423, 431, 93 S.Ct. 1637, 1642, 36 L.Ed.2d 366 (1973) (case might arise where government conduct was "so outrageous" as to violate due process); *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) (majority of court, composed of three dissenting justices and two concurring justices, accept viability of due process defense, distinct from entrapment defense, based on outrageous government conduct). However, a delineation of the defense, and, in particular, of its relationship to the entrapment defense, remains "at best, elusive". *United States v. Jannotti,* 673 F.2d 578, 606 (3d Cir.) (in banc), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982). This court has made clear that, to the extent a government misconduct defense distinct from entrapment is available, it "must be predicated on intolerable government conduct which goes beyond that necessary to sustain an entrapment defense." *Id.* at 607.

Driscoll maintains that the government action in this case is comparable to that found so outrageous as to violate defendants' due process rights in *United States v. West,* 511 F.2d 1083 (3d Cir.1975), and *United States v. Twigg,* 588 F.2d 373 (3d Cir.1978). We disagree. In *United States v. West,* we found that the government's conduct in having its agent suggest a narcotics sale to the defendant, providing the source of supply for the drug, and arranging for its sale to another agent, although the defendant had no "prior inclination to engage in this evil business," had "passed the point of toleration." 511 F.2d at 1086, 1085. In *United States v. Twigg,* the government suggested that defendant join in establishing a methamphetamine laboratory and then supplied him with essential materials, equipment, technical expertise, and a site. Evaluating this conduct in light of the fact that at the time the defendant "was lawfully and peacefully minding his

own affairs," we concluded that "fundamental fairness" barred prosecution of defendant. 588 F.2d at 381. *See also Greene v. United States,* 454 F.2d 783 (9th Cir.1971) (defendant had valid due process defense where government agent helped establish bootlegging operation, supplied ingredients and was its only customer).

In this case, the Postal Service agents merely offered to sell and then sold Driscoll a magazine. Their conduct thus approximates the conduct that survived due process challenges in *United States v. Jannotti,* 673 F.2d 578 (3d Cir.) (in banc), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982), and *United States v. Thoma,* 726 F.2d 1191 (7th Cir.), *cert. denied,* 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984). In *Thoma,* a case also involving use of the mails to transport pornography, the Postal Service's undercover operation made numerous attempts to solicit defendant's participation in its fictitious child pornography organization before the defendant responded to the solicitations. In rejecting defendant's due process argument, the court held that the undercover organization "was nothing more than an undercover operation of an inherently clandestine activity and did not constitute Government misconduct, much less violate defendant's right to due process." *Id.* at 1199. In *Jannotti,* a case involving the ABSCAM investigations designed to locate public officials susceptible to bribery, the agents handed over substantial amounts of cash to buy influence; we distinguished *Twigg* on the ground that in *Twigg* the government set up, encouraged, and provided technical expertise to defendant whereas in *Jannotti,* it "merely created the fiction that it sought to buy the commodity —influence—that the defendants proclaimed they already possessed." 673 F.2d at 608. In view of this precedent, we conclude that the government's conduct here simply does not approach the level of outrageousness necessary to raise a valid due process defense.

■ We also reject Driscoll's contention that he was targeted as a suspect in "Project Looking Glass" when the agents

did not have information establishing that he had previously received child pornography through the mails. He seems to be arguing that there was no reasonable basis for the Postal Service agents to have targeted him. We fail to see the legal significance of such a contention. Indeed, we have stated that, "[w]here the conduct of the investigation itself does not offend due process, the mere fact that the investigation may have been commenced without probable cause does not bar the conviction of those who rise to its bait." *Jannotti*, 673 F.2d at 609.

## III.

For the foregoing reasons, we will affirm the order of the district court.