UNITED STATES of America,

v.

Richard PEDRONI, Appellant.

No. 99–5182.

United States Court of Appeals,
Third Circuit.

Argued March 7, 2002.

Filed April 18, 2002.

Christopher J. Christie, Esq., Office of the United States Attorney, Newark, NJ, Robert E. Lindsay, Esq., Alan Hechtkopf, Esq., Karen Quesnel, Esq., (Argued), United States Department of Justice, Washington, DC, for Appellee.

James A. Plaisted, Esq., (Argued), Walder, Sondak & Brogan, Roseland, NJ, for Appellant.

Before SCIRICA and COWEN, Circuit Judges, RESTANI,* Judge, United States Court of International Trade.

OPINION

COWEN, Circuit Judge.

Richard Pedroni was found guilty of violating 18 U.S.C. § 371 by conspiring to defraud the United States, and to commit tax evasion (in violation of 26 U.S.C. § 7201), wire fraud on the State of New Jersey (in violation of 18 U.S.C. § 1343), and money laundering (in violation of 18 U.S.C. § 1957). He was acquitted on all other counts. The District Court sentenced Pedroni to 37 months and ordered him to pay $500,000 in restitution. He

* Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

challenges the sufficiency of the evidence to support his conviction, some of the evidentiary rulings and jury instructions, as well as his sentence. We will affirm.

## I.

Pedroni and his coconspirators participated in a "daisy chain" scheme to evade excise taxes on the sale of certain kinds of fuel. The elements of such schemes have been detailed sufficiently elsewhere. See, e.g., *United States v. Morelli,* 169 F.3d 798, 801 (3d Cir.1999), *cert. denied,* 528 U.S. 820, 120 S.Ct. 63, 145 L.Ed.2d 54 (1999) (citations omitted). From 1989 until at least 1993, Pedroni operated as the president of Pedroni Fuels, a fuel supply company operating at the top of the daisy chain. We will add further factual detail below as it becomes necessary to the legal discussion.

## II.

### A. Sufficiency of the Evidence

■ Pedroni first challenges the sufficiency of the evidence to support his conviction. When reviewing the sufficiency of the evidence to sustain a conviction, we must ask whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt, viewing the evidence in the light most favorable to the government. See *United States v. Veksler,* 62 F.3d 544, 551 (3d Cir.1995) (citations omitted). Count One of the Superseding Indictment charged the conspirators with a multiple-object conspiracy to defraud the United States and to commit tax evasion, wire fraud on the State of New Jersey, and money laundering. The Government was required to prove three elements: "(1) the existence of an agreement, (2) an overt act by one of the conspirators in furtherance of the objectives, and (3) an intent on the part of the conspirators to agree, as well as to

defraud the United States" or to commit an underlying offense. *United States v. Shoup,* 608 F.2d 950, 955–56 (3d Cir.1979). Pedroni challenges the sufficiency of the first and third elements, arguing that he had no actual knowledge of the illegal objective of the conspiracy nor the requisite intent required.

We are satisfied that a rational finder of fact could conclude beyond a reasonable doubt that the Government met its burden of proof. A jury could rationally infer that Pedroni had actual knowledge of the conspiracy, and that he intended that excise taxes would not be paid on the fuel Pedroni supplied to the daisy chain. For example, Pedroni stock-transferred fuel into Petro Plus' account at the terminal despite invoicing the fuel to a middle company in the chain. He called Kings to determine which company to invoice for the fuel, and it was Kings (and not Petro Plus) that paid Pedroni for the fuel before Pedroni even sent invoices for the middle companies to Kings. When documents and certification were lacking, Pedroni called personnel at Kings, instead of calling the actual purchaser, to give that particular purchasing company an opportunity to provide correct documentation. It did not matter that Pedroni sold to middle companies in the daisy chain that had 637 Licenses (making the initial transactions tax-exempt) because Pedroni clearly knew that he was in effect selling to PetroPlus and that taxes were not being payed along the chain. The record reflects numerous examples of similar deceptions. It is apparent from the record that the trial provided sufficient evidence from which a rational jury could find the essential elements of the offense beyond a reasonable doubt.

### B. Jury Instructions

Pedroni argues that the District Court erred when it did not deliver a charge

which included instructions on good-faith defense, willfulness, multiple conspiracy, missing witness, and unity of purpose instructions. Additional error is alleged because the District Court did not instruct the jury that each element must be found unanimously and advised the jury to disregard the evidence that Pedroni lacked a stake in the venture. "We will reverse the [D]istrict [C]ourt's denial to charge a specific jury instruction only when the requested instruction was correct, not substantially covered by the instructions given, and was so consequential that the refusal to give the instruction was prejudicial to the defendant." *United States v. Phillips*, 959 F.2d 1187, 1191 (3d Cir.1992). In determining whether the District Court stated the appropriate legal standards in its charge, our review is plenary. *United States v. Johnstone*, 107 F.3d 200, 204 (3d Cir.1997). The jury charge must clearly articulate the legal standards at issue and be structured to avoid confusion, we examine the charge in its entirety. *Id.*

■ We have previously made clear that a District Court's failure to give a good-faith defense instruction does not constitute an abuse of discretion, so long as the charge included detailed instructions on the elements of the crime. *Gross*, 961 F.2d at 1103 ("[A] jury finding of good faith is inconsistent with a finding that the defendant acted knowingly and willfully."). Consistent with our practice to review the entire jury charge as a whole, the record is clear that the District Court adequately charged the jury on willfulness. It was not in error to refuse to charge the defense of good faith.

■ As to the failure to charge on multiple conspiracies, the District Court did instruct the jury that the "first element for you to determine is whether the conspiracy charged in Count One existed" and that

"[i]n order to find a defendant guilty of conspiring to defraud the United States, you must find that he was a participant in the scheme to defraud the United States set forth in the Indictment, and not some other scheme." App. at 627, 630. The District Court further instructed the jury that it could not consider whether a defendant was a member of the conspiracy unless it found that "the evidence shows that the conspiracy charged in Count One existed." App. at 633. The charge, viewed in its entirety, substantially covered the instruction Pedroni argues should have been included. *See, e.g., Phillips*, 959 F.2d at 1191.

■ Pedroni argues that the District Court should have given a missing witness instruction because the government chose not to call three of its cooperating witnesses. It is clearly established precedent in this Circuit that a missing witness instruction is not appropriate when the witness is available to both the defense and the prosecution. *United States v. Busic*, 587 F.2d 577, 586 (3d Cir.1978), *rev'd on other grounds*, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980). Pedroni does not assert that these three witnesses were not available to him.

■ Pedroni's argument that the District Court erred by failing to charge the jury with a unity of purpose likewise fails. The District Court instructed the jury that it had to find " 'a unity of purpose' or a 'common design' to do something that the law forbids." App. at 631. This more than substantially covered Pedroni's proffered additional (and therefore unnecessary) instruction.

■ Pedroni argues that the District Court failed to inform the jury that each element of the offenses had to be found unanimously. Again, reviewing the jury charge in its entirety, the District Court

adequately charged the jury. The District Court instructed that the jury "must be unanimous as to which one of the objects of the conspiracy the defendant agreed to pursue," App. at 627–28, and that the jury "verdict must be unanimous." App. at 659. The jury was properly charged.

■ Pedroni also takes issue with the instructions to the jury that it should disregard evidence that Pedroni lacked a stake in the venture. We have previously held that the government need not prove "that each conspirator expected to benefit from the conspiracy" in order to support a conspiracy conviction. *United States v. Shoup,* 608 F.2d 950, 957 (3d Cir.1979). The instruction was correct.

C. Undercover Operation

■ Pedroni argues that the Government's payment of cash "bribes" to Pedroni's broker, Robert Recek, induced Pedroni to sell fuel to the Government's undercover business. The record reveals that in May of 1991, the Government established an undercover business. Pedroni became the undercover business' first supplier. The undercover agent initially secured supplies from Pedroni through Pedroni's broker, Recek. In addition to the normal broker's fee, the undercover business payed Recek an additional .5¢ per gallon for every gallon of fuel secured from Pedroni.

Whether the Government's conduct in running the undercover operation was so outrageous as to violate Pedroni's due process rights is a legal question over which our standard of review is plenary. *United States v. Driscoll,* 852 F.2d 84, 85 (3d Cir.1988). We have expressed the view that, "to the extent a government misconduct defense distinct from entrapment is available, it 'must be predicated on intolerable government conduct which goes beyond that necessary to sustain an entrap-

ment defense.'" *Id.* at 86 (citing *United States v. Jannotti,* 673 F.2d 578, 606 (3d Cir.1982) (en banc), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982)). We reject Pedroni's contention that the undercover government business and agent, with the help of Recek, rose to a level that violated Pedroni's due process rights. The Government did not initiate the criminal activity and Pedroni actively and willingly participated in it. See, e.g., *United States v. Twigg,* 588 F.2d 373 (3d Cir.1978) (government approached defendant and supplied all essential material and equipment for methamphetamine production); *United States v. West,* 511 F.2d 1083 (3d Cir.1975) (government suggested narcotics sale and provided source of the supply for the sale and arranged the sale to another undercover agent).

D. Expert Witnesses at Trial

Pedroni asserts that the District Court erroneously permitted three Government witnesses to offer expert opinions that Pedroni was a part of the criminal conspiracy. A decision to admit expert testimony is reviewed for abuse of discretion. *United States v. Gibbs,* 190 F.3d 188, 211 (3d Cir.1999), *cert. denied,* 528 U.S. 1131, 120 S.Ct. 969, 145 L.Ed.2d 840 (2000) (citation omitted). The trial judge is given "broad discretion" to admit or exclude such testimony, based upon whether it is helpful to the trier of fact. *Id.* (citing Fed.R.Evid. 702).

The three witnesses are Malcolm Fox, Paul Malloy, and Steven Bursey. As an initial matter, the Government did not offer Fox as an expert witness and the District Court did not allow Fox to testify as an expert. As a lay witness, Fox was allowed to testify to opinions and inferences if they were "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testi-

mony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed.R.Evid. 701. A review of the record reveals that Fox's testimony fell within the permissible parameters of Rule 701. We find no abuse of discretion concerning the Fox testimony.

 Malloy, an IRS agent, testified about tax returns and financial transactions, the taxing structure as it pertained to motor fuel excise tax, and taxes and the methods of evasion or tax fraud (as elicited on the record by Pedroni's counsel after the Government presented evidence concerning Malloy's qualifications). Bursey, a former FBI Special Agent, testified about his experiences as an undercover agent operating the undercover business to which Pedroni sold fuel on several occasions.

Our review of the record has failed to uncover any evidence where these two witnesses explicitly opined about Pedroni's part in the conspiracy. *Gibbs,* 190 F.3d at 212 ("Where an expert in a criminal case has not explicitly testified about a defendant's intent, courts [are] reluctant to exclude the expert's testimony under Rule 704(b)." (emphasis added)). Many of the passages from the transcript challenged by Pedroni are statements made by the witnesses in response to questions posed on cross-examination. The District Court did not abuse its discretion in allowing these witnesses to testify.

### E. Evidence of Other Conspiracies and Other Charges

 Count 38 of the Superseding Indictment charged one of Pedroni's coconspirators, Daniel Enright, with a conspiracy to extort money from two other coconspirators.

Pedroni argues that this Count, along with other charges in the Indictment, had nothing to do with him and that he was prejudiced by the District Court's decision to deny his motion for severance. The "other charges" in the Indictment include: Count 39 which charged Enright and Wasserstrom with committing a currency reporting violation; evidence concerning Enright's personal returns for 1990 through 1993; evidence of excise tax evasion occurring after Pedroni stopped providing fuel to the daisy chain; evidence of wire fraud and money laundering charges involving payments to different suppliers; and evidence that Enright received millions of dollars of income from his participation in the conspiracy.

Rule 14 of the Federal Rules of Criminal Procedure states:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or other defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

The burden of showing prejudice lies on Pedroni. *United States v. Eufrasio,* 935 F.2d 553, 568 (3d Cir.1991). Our review of the District Court's denial of the severance motion requires that we "first determine from the record as it was when the severance motions were made, what trial developments were then reasonably foreseeable, and in that light decide whether the court abused its discretion denying severance." *Id.* If we determine that the District Court abused its discretion, then we must determine whether the denial caused trial prejudice, asking "whether the jury could have been reasonably expected to compartmentalize the allegedly prejudicial evidence in

light of the quantity and limited admissibility of the evidence." *Id.*

We hold that the District Court did not abuse its discretion in denying Pedroni's Rule 14 severance motion. Severing Pedroni's trial was not required, even if some potential for prejudice might be associated with evidence of the Enright extortion conspiracy and other charges in the Indictment unrelated to Pedroni. "Prejudice should not be found in a joint trial just because all evidence adduced is not germane to all counts against each defendant." *Id.* In addition, the District Court instructed the jury to "carefully weigh the evidence relating to each defendant and each charge," which it clearly did when we observe it convicted Pedroni on only one count and acquitted him on all remaining counts. We see no abuse of discretion.

### F. Other Allegedly Prejudicial Evidence

 Pedroni raises a number of challenges to the order of the District Court's to admit evidence on and concerning tapes made by undercover agents relating to the undercover business. Pedroni argues that the evidence should have been excluded under Rule 404(b) of the Federal Rules of Evidence.

Federal Rule of Evidence 404(b) is a "codification of the common law prohibition against the admission of evidence of prior crimes, wrongs, or other acts relevant solely to prove the defendant's 'general criminal predisposition to do wrong.'" *United States v. Scarfo,* 850 F.2d 1015, 1019 (3d Cir.1988) (citation omitted) (emphasis added). The rule prohibits the admission into evidence of extrinsic acts intended to prove a defendant's propensity for crime or to suggest to the jury unfavorable inferences reflecting on his character. But evidence that bears on a relevant issue in a case, though possessing the potential to damage the defendant's

cause, "is not inadmissible for that reason alone." *Id.* at 1018–19. If the evidence is offered for another proper reason, "the same evidence of other crimes or acts is subject only to the ordinary limitations under Rules 402 and 403," which include undue prejudice *Id.* at 1019. Intended as a "rule of inclusion," the possible uses of other crimes evidence has been used to prove such things as: motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, background information, parties familiarity with one another, concert of action, parties continuing relationship, and to assist jurors in understanding defendant's role in the scheme. *Id.* (citations omitted). Before admitting evidence of other acts under Rule 404(b), the District Court must ask, "Whether that evidence is probative of a material issue other than character." *Huddleston v. United States,* 485 U.S. 681, 685, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988). Under Rule 403, the District Court must "appraise the genuine need for the challenged evidence and balance that necessity against the risk that the information will influence the jury to convict on improper grounds." *Scarfo,* 850 F.2d at 1019. Our review of a District Court's decision to admit or exclude evidence is for abuse of discretion, "and such discretion is construed especially broadly in the context of Rule 403." *United States v. Mathis,* 264 F.3d 321, 326–27 (3d Cir. 2001).

As the record clearly reveals, the District Court performed the balancing test mandated under Rule 403 and admitted those portions of the tapes which it found were not unduly prejudicial to Pedroni. Despite Pedroni's challenges to the contrary, the District Court gave proper and timely limiting instructions with regard to the challenged evidence which it admitted. The District Court also conducted a care-

ful review of the tapes, and excluded those portions of the tapes which it found excludable under Rule 403. We find no abuse of discretion.

G. Restitution

█ Pedroni argues that the District Court improperly ordered him to pay $500,000 in restitution. We review the appropriateness of a District Court's award of restitution for abuse of discretion. *United States v. Simmonds*, 235 F.3d 826, 829 (3d Cir.2000).

As the Government aptly points out, the District Court could have ordered up to $74 million dollars in restitution, given that the total loss was estimated at $132 million and the loss associated with the charges for which Pedroni was acquitted totaled almost $58 million. In such a light, we find no abuse of discretion in the District Court's (rather generous) restitution order.

### III.

We have thoroughly reviewed all the arguments presented by Pedroni in his submissions to this Court, and those presented at oral argument, and find no basis to disturb the conviction or the sentence imposed by the District Court. The judgment of the District Court entered on March 8, 1999, will be affirmed.