

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-3-2006

# USA v. King

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1839

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. King" (2006). *2006 Decisions.* Paper 624.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/624

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 05-1839

———

UNITED STATES OF AMERICA

v.

PAUL E. KING, JR.,

Appellant

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 03-cr-00363)
District Judge: Hon. Yvette Kane

———

Submitted Under Third Circuit LAR 34.1(a)
October 24, 2005
Before: SLOVITER and FISHER, Circuit Judges, and
THOMPSON, District Judge*

(Filed August 3, 2006)

———

OPINION

_____

\*     Hon. Anne E. Thompson, United States District Judge for the District of
New Jersey, sitting by designation.

SLOVITER, Circuit Judge.

Paul E. King, Jr. ("King") appeals from the final judgment by the District Court denying his Motion to Suppress evidence seized in the course of a search of his home pursuant to a warrant. He also appeals the sentence imposed by the District Court. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

**I.**

In 1999, the United States Postal Inspection Service ("USPIS") found that King had paid for subscriptions to seven internet websites containing images of child pornography. In 2000, USPIS offered King the chance to subscribe to a website with child pornographic images, but King did not respond. In February 2003, however, King responded to another USPIS investigation and requested sexually explicit video catalogs indicating interest in "Pedophilia" and "Pre-Teen Girls." USPIS then provided King with an order form for various videotapes which were described as containing depictions of minors engaged in sexually explicit activity. King returned the order form with payment for one videotape, and wrote at the bottom of the form, "I am interested to see if you are for real and there are such things like this on the market! If this is a sting, nice try." App. at 161.

USPIS applied for an "Anticipatory Search Warrant," App. at 34, to enter and search King's home after his acceptance of the videotape, supported by an affidavit ("Affidavit") from United States Postal Inspector Thomas F. Kochman. The Affidavit

2

was expressly attached to and made part of the application. In paragraphs 20 and 21 of the Affidavit, Kochman made clear that a search would only be attempted once USPIS Inspectors determined that the contraband videotape was taken inside King's residence. He stated:

> On or about April 9, 2003 the previously described Express Mail envelope containing the videotape will be delivered to Paul E. King Jr. by knocking on the front door of his residence . . . . If no one is home at the time delivery will be reattempted until King accepts delivery of the express mail envelope and videotape. . . .
>
> Your affiant seeks authorization for Postal Inspectors, with appropriate assistance from other law enforcement officers, to enter and search [King's] residence . . . at such time as it is determined that the videotape has been taken inside the residence.

App. at 39.

Kochman detailed his extensive experience with the investigation of child sexual exploitation, described the investigation of King, and averred that "computers are used to supplement or supplant . . . [older] methods of transferring child pornography" such as "personal contacts, mailings, and telephone calls," and that individuals who solicit and deal in child pornography over the Internet often store on their computers child pornography or electronic data memorializing their dealings therein.

On April 8, 2003, Magistrate Judge Mannion issued a search warrant authorizing Kochman to seize the videotape, the envelope in which it was delivered, all other "videotapes, photographs, negatives, drawings, magazines or other visual media or literature depicting or describing minors engaged in sexually explicit conduct," all

3

computer hardware and data, all correspondence, diaries, notes, and other records relating to the transfer of materials depicting minors engaged in sexually explicit conduct. App. at 32. Although the warrant mentioned the Affidavit, it did not explicitly incorporate Paragraphs 20-21 of the Affidavit or otherwise condition the search upon the arrival of the videotape.

On April 9, 2003 a postal inspector delivered the envelope by hand and King accepted the package without opening it. Upon acceptance, the USPIS entered and searched his home, seizing all videotapes and computer equipment. The videotape that was delivered was the only one found containing child pornography, but computer discs contained tens of thousands of images of child pornography.

King was charged with knowingly receiving material that contained child pornography pursuant to 18 U.S.C. § 2252A(a)(2)(A) (count one) and knowingly possessing in excess of ten materials containing images of child pornography pursuant to 18 U.S.C. § 2252A(a)(5)(B) (count two). He pled not guilty and filed a Motion to Suppress the videotape and computer images based on a lack of probable cause. On August 25, 2004, the District Court, following a hearing, denied King's Motion to Suppress.

Subsequently, King entered into a Plea Agreement and pled guilty to count one in exchange for the dismissal of count two. King reserved his right to appeal regarding the Motion to Suppress. King further agreed that he would cooperate with the investigation,

4

and that if the United States believed he provided "substantial assistance" pursuant to 18 U.S.C. § 3553(e), the United States could move for downward departure below the applicable Sentencing Guideline range.

The Court thereafter determined that King's Offense Level was 21, denied the United States's Motion for Downward Departure, awarded King a three-level reduction for acceptance of responsibility (resulting in Offense Level 18), and sentenced King to 40 months' imprisonment and 3 years of supervised release. King timely appealed. We consider first King's appeal of the denial of his motion to suppress and thereafter his sentence.

## II.

### A.  Fourth Amendment

The Fourth Amendment guarantees the right of persons to be secure from "unreasonable searches and seizures" and provides that "no warrants shall issue, but upon probable cause." U.S. Const. amend. IV.  A warrant may be issued based on a "totality-of-the-circumstances" test, which requires a reasonable likelihood that the search will uncover evidence of criminal acts. Illinois v. Gates, 462 U.S. 213, 238 (1983).  This Court must uphold the determination of probable cause by the Magistrate Judge who issued the warrant if there was a "substantial basis" for concluding that a search would uncover evidence of wrongdoing. United States v. Deaner, 1 F.3d 192, 196 (3d Cir. 1993).  We review the factual findings of the district court for clear error but

exercise plenary review over the legality of the denial of the Motion to Suppress in light of the facts found. United States v. Riddick, 156 F.3d 505, 509 (3d Cir. 1998).

The Supreme Court has interpreted the Fourth Amendment to exclude from use as evidence that which is seized during an unconstitutional search. Mapp v. Ohio, 367 U.S. 643 (1961). However, evidence seized when officers were acting in good faith reliance on a warrant, even when later found to be unsupported by probable cause, is admissible. United States v. Leon, 468 U.S. 897 (1984).

King makes two arguments that the search warrant in the present case was unconstitutional. First, he argues that because the order form for the videotape was the only basis for probable cause, there was no probable cause to search his computer equipment, and that the evidence of the images contained in his computer files should therefore be excluded. Second, King asserts that the anticipatory warrant as a whole was unconstitutional because limiting language conditioning the search on the triggering event (i.e., delivery of the videotape) was not contained within the four corners of the warrant.[1] Each argument will be addressed in turn.

---

[1] King also offers three minor and non-meritorious arguments. First he argues that there was no probable cause as to a crime of scienter. However, the order form King returned for the videotape, combined with the delivery of the requested item, would alone constitute probable cause that King knowingly possessed the contraband. Second, King implies, but does not explicitly argue, that the investigation constituted improper conduct on the part of the Government. See Appellant's Letter Br. at 4 (claiming that Inspector Kochman's decision to solicit King's 2003 order of child

6

King first claims that the warrant was overbroad insofar as it authorized the search and seizure of computer hardware and data because probable cause was extant only with respect to the contraband videotape. He argues that the information regarding his membership to websites containing child pornography was "stale" and therefore was improperly relied upon to permit the seizure of his computer equipment.

Although actual information of King's involvement with website child pornography dated back to 1999, the finding of probable cause to seize King's computer equipment was proper due: (1) to King's more recent declaration of interest in pedophilia through the order of the videotape in 2003 (indeed, King's letter brief "admit[s] that he floated his trial balloon by ordering the videotape in 2003, shortly before the warrant issued," Appellant's Letter Br. at 4), and (2) to Kochman's extensive experience with the usual habits of those who transmit and store child pornography via the internet combined

pornography was improper because it was "based wholly upon the 1999 investigation.") However, merely offering an opportunity to purchase child pornography is not improper. See United States v. Driscoll, 852 F.2d 84, 85 (3d Cir. 1988). Third, King cites Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002), for the proposition that the warrant permitted the seizure of items that were not criminal in nature, thus infringing on his First Amendment rights. However, the warrant specifically refers to that which depicts or describes child pornography "as defined by Title 18, U.S. Code, Section 2256," thus limiting the scope of the search to those non-protected items. App. at 32. Moreover, a class of items described in a warrant still meets the particularity requirement if said class is implicated in the criminal activity. United States v. Conley, 4 F.3d 1200, 1208 (3d Cir. 1999).

with Kochman's specific knowledge as to King's habits in that regard dating back to 1999. We have upheld the validity of search warrants based upon information dating back more than a year when that information is combined with ongoing or current information of similar wrongdoing. See United States v. Harvey, 2 F.3d 1318, 1323 (3d Cir. 1993) (holding that evidence of receipt of child pornography by mail collected over a year prior not stale when considered alongside evidence of recent receipt of contraband).

King further contends that Kochman's statements are conclusory and speculative and that King's failure to respond to the website offering in 2000 shows that he does not fall into Kochman's generalizations. Kochman's statements were based on 15 years of experience, including over 500 investigations of pedophile activity and training in the investigation of crimes involving the sexual exploitation of minors. Statements by qualified affiants as to patterns of criminal activity can be used to support the validity of a warrant. See Harvey, 2 F.3d at 1322-23. Moreover, King's stated interest in pedophilia and pre-teen girls in 2003 negates any contention that his failure to respond to the 2000 investigation demonstrated lack of interest.

King's second major contention is that probable cause did not exist before the videotape arrived at King's house because the warrant was facially unconstitutional in that it did not contain "triggering information" (i.e., failed to include language within the four corners of the warrant explicitly conditioning the execution of the warrant upon the

delivery of the videotape). This, according to King, created an unconstitutional risk that the warrant could have been prematurely executed. The Government responds that the warrant was not facially invalid because it was governed by the conditioning language in the Affidavit.

The Supreme Court's recent decision in United States v. Grubbs, 126 S.Ct. 1494 (2006), decided after the District Court's decision in this case, supports the Government's position and is dispositive of King's second argument. In Grubbs, as in the present case, the affidavit accompanying the search warrant application specified that the warrant would be executed only after a parcel containing a videotape of child pornography (ordered from an undercover Postal Inspector) was physically taken into the Grubbs' residence. Id. at 1497-98. However, language conditioning execution of the search warrant on this "triggering event" was not contained in or incorporated into the search warrant itself. Id. at 1498. The Supreme Court held that this omission did not render the warrant unconstitutional because the particularity requirement of the Fourth Amendment does not require that an anticipatory search warrant explicitly mention conditions precedent to the search to be performed. Id. at 1500. All that is required by the Fourth Amendment is that a warrant "particularly describe" the place to be searched and the persons or things to be seized. Id. at 1499-1500. In the present case, the warrant

met this requirement.[2]

The District Court erred neither in including the computer hardware and data within the ambit of the search warrant nor in omitting the Affidavit's "triggering conditions" from the search warrant. The anticipatory search warrant in the present case was properly supported by probable cause and was not unconstitutional.

## B.  Sentencing

In United States v. Booker, 543 U.S. 220 (2005)**,** the Supreme Court held that the Sentencing Guidelines are to be treated as advisory, rather than mandatory, under the Sixth Amendment. We review sentences imposed under this advisory scheme for "reasonableness." Id. at 260. As an initial matter, "a trial court must calculate the correct guidelines range applicable to a defendant's particular circumstances." United States v. Cooper, 437 F.3d 324, 330 (3d Cir. 2006). Then, in order "[t]o determine if the court

---

[2] King's letter brief addressing the import of Grubbs on the present case ignores the holding in Grubbs (i.e., that an anticipatory search warrant need not explicitly state conditions precedent). Instead, the letter brief addresses only that which Grubbs did not hold. In particular, King's letter brief argues that Grubbs "did not change the rule that staleness of information can vitiate [probable cause] for [an] anticipatory search warrant," Appellant's Letter Br. at 2, and "does not affect [King]'s contention that the warrant was unconstitutionally broad." Id. at 5. Indeed, King is correct that Grubbs did not alter our analysis of whether the warrant's inclusion of computer hardware and data runs afoul of the constitution: For the reasons detailed supra, the scope of the warrant in the present case was not unconstitutionally broad or based upon stale information.

10

acted reasonably in imposing [a] sentence, we must . . . be satisfied the court exercised its discretion by considering the relevant factors" set forth in 18 U.S.C. § 3553(a). Cooper, 437 F.3d at 329.

The relevant § 3553(a) factors are as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines. . . .
. . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a).

In Cooper, this court made clear that a district court need not "discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing." Cooper, 437 F.3d at 329 (citations omitted). However, there must be some indication in the record that the district court considered all

11

§ 3553 factors non-frivolously raised by a defendant at sentencing. Id. "In addition to ensuring a trial court considered the § 3553(a) factors, we must also ascertain whether those factors were reasonably applied to the circumstances of the case. In doing so, we apply a deferential standard, the trial court being in the best position to determine the appropriate sentence in light of the particular circumstances of the case." Id. at 330.

King argues that his sentence is unreasonable because (1) the District Court's denial of the Government's Motion for Downward Departure disregarded King's substantial assistance, and (2) the District Court did not explain why King's 40-month sentence was reasonable, and arbitrarily rejected all of the his mitigating factors except for acceptance of responsibility.

King's argument as to the District Court's denial of downward departure is without merit. In Cooper, we reaffirmed our pre-Booker precedent barring appellate review of district courts' "discretionary decisions to deny departure, unless for allegation of legal error." Id. at 332 (citing, inter alia, United States v. Ruiz, 536 U.S. 622, 626-28 (2002)). The District Court made no legal error in denying the Government's Motion for Downward Departure.

King's second argument (i.e., that the District Court failed to consider all § 3553 factors) is also without merit. The District Court evaluated 18 U.S.C. § 3553(a)(4), considering the advisory guideline range as mandated by Booker. The District Court reduced King's Offense Level from 21 to 18 based on acceptance of responsibility and

12

treated the resultant "27- to 33-month guideline range as an advisory range." App. at 117.

Neither party contests the calculation of Offense Level.

Consistent with <u>Booker</u>, the District Court expressly viewed the guidelines as advisory. The District Court imposed a sentence of 40 months' imprisonment, sentencing seven years above the Guideline range on several bases relevant under § 3553(a), namely: (1) because the District Court was "very concerned about Mr. King's acceptance [of responsibility]," App. at 118, (2) because of "the number of images involved here," App. at 119-20, (despite the fact that charge two, alleging King's possession of over ten pictures, had been dropped) and (3) because the District Court thought a longer imprisonment term would prevent recidivism upon King's release from prison.

## III.

For the foregoing reasons, we will affirm the judgment of sentence as well as the District Court's denial of King's Motion to Suppress.